951 A.2d 1069 (2008)
401 N.J. Super. 496
Susan OLKUSZ and Richard Olkusz, Plaintiffs-Respondents,
v.
Lakingy BROWN, Hackensack University Medical Center and Federal Insurance Company,[1] Defendants-Appellants, and
Atlantic Mutual Insurance Company, Defendant-Respondent.
No. A-2216-07T2
Superior Court of New Jersey, Appellate Division.
Argued April 15, 2008.
Decided July 22, 2008.
*1070 Gerard H. Hanson, Princeton, argued the cause for appellants Lakingy Brown, Hackensack University Medical Center and Federal Insurance Company (Hill Wallack, attorneys; Mr. Hanson, of counsel and on the brief; Todd J. Leon, on the brief).
Glenn M. Gerlanc, Hackensack, argued the cause for respondents Susan and Richard Olkusz (Parisi & Gerlanc, attorneys; Mr. Gerlanc, of counsel and on the brief; Juliette Gillespie, on the brief).
Joseph J. Michalowski, Madison, argued the cause for respondent Atlantic Mutual Insurance Company (Chase Kurshan Herzfeld & Rubin, attorneys, Livingston; Mr. Michalowski, on the brief).
New Jersey State Bar Association, attorneys for amicus curiae New Jersey State Bar Association (Gerald H. Baker, Hoboken, of counsel and on the brief; Lynn Fontaine Newsome, President, Morristown, on the brief).
Maggiano, DiGirolamo, Lizzi & Roberts, Fort Lee, for amicus curiae American Trial Lawyers Association of New Jersey (Michael Maggiano, of counsel and on the brief).
Before Judges COBURN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
FUENTES, J.A.D.
A "step-down" clause is a contractual device inserted in an auto insurance policy. Here, it limits the UM/UIM coverage available to the employee of the insured business entity to the lower coverage amount provided in that employee's personal auto policy, when available. This practice was expressly sanctioned by the Supreme Court in Pinto v. New Jersey Manufacturers Insurance Co., 183 N.J. 405, 874 A.2d 520 (2005). In this appeal, we are required to determine whether an amendment to N.J.S.A. 17:28-1.1, adopted by the Legislature on September 10, 2007, reversing the Supreme Court's holding in Pinto, and prohibiting the use of step-down clauses, should be applied retroactively.
The question first arose in the Law Division in the context of a declaratory judgment action filed by Federal Insurance Company (Federal), the issuer of a business auto policy to defendant Hackensack University Medical Center. In denying Federal's motion for summary judgment, the trial court held that the Legislature intended to apply this amendment retroactively. By leave granted, we now reverse.
Absent a clear indication from the Legislature as to the effect of this statute, we hold that well-established principles of statutory interpretation require that we construe the statute's restriction on the common law right of freedom to contract prospectively. The statutory prohibition at issue cannot be viewed as "curative," because the holding in Pinto was not predicated on a misapprehension of established legislative policy.

*1071 I
At all times relevant to this case, plaintiff Susan Olkusz was employed by defendant Hackensack University Medical Center as a registered nurse. The Medical Center provided a shuttle service to its employees, transporting them from the area where they parked their cars to their job-specific sites within the medical complex. On April 13, 2004, plaintiff was injured when the shuttle she was riding in came to a sudden stop in order to avoid colliding with an unidentified vehicle that illegally proceeded through an intersection governed by a traffic stop sign.
Plaintiff received workers' compensation benefits in connection with this incident. She also filed a claim for UM benefits with defendant Atlantic Insurance Company, the carrier that had issued her personal auto insurance policy providing $100,000 in UM/UIM coverage. In addition to her personal policy, plaintiff was also entitled to UM benefits under her employer's business auto policy issued by Federal, which provided $1,000,000 in UM/UIM coverage. The Federal policy, however, contained a step-down clause contractually denying plaintiff access to her employer's UM coverage by limiting the maximum amount of UM benefits to the coverage limit contained in her personal auto policy.
On March 12, 2007, the trial court granted partial summary judgment in favor of Federal, holding that plaintiff was bound by the step-down provision in her employer's business auto policy. The court relied on the Supreme Court's holding in Pinto, supra, which expressly upheld the enforceability of a step-down clause, noting that "[o]ur case law recognizes the legitimacy of step-down provision even though they may result in differential treatment of similar plaintiffs based on the existence of other available insurance." 183 N.J. at 412, 874 A.2d 520.
On September 10, 2007, the Legislature adopted S-1666, amending N.J.S.A. 17:28-1.1 as follows:
(f) Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.
The S-1666 amendment was accompanied by the following legislative statement:
STATEMENT
This bill prohibits the use of "step-down" provisions in motor vehicle liability policies issued to corporate or business entities to lower uninsured or underinsured motorist coverage for employees to the limits of coverage available to the employees under their personal policies. *1072

This bill is in response to the New Jersey Supreme Court's decision in Pinto v. New Jersey Manufacturers Insurance Company, 183 N.J. 405[, 874 A.2d 520] (2005). In Pinto, the court held that as to a motor vehicle liability policy that names a corporate or business entity as a named insured, step-down provisions which limit uninsured or underinsured motorist coverage for employees of that entity that are not individually named on the policy are valid and enforceable. Thus, the court's ruling, which upholds earlier case law on the subject, allows an employee's coverage under an employer's business motor vehicle insurance policy to be limited to the lower limits of uninsured or underinsured motorist coverage contained in the employee's individual motor vehicle liability policy, even in situations in which the employee is injured in a covered vehicle in a work-related accident, if the employer's policy so provides.
This bill reverses the effect of the Pinto decision by prohibiting step-down provisions in these policies. Further, the bill expressly provides that a policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to any individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy, or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.
Finally, the public law that enacted the S-1666 amendment provides that "[t]his act shall take effect immediately." L. 2007, c. 163, § 2.
Armed with these newly enacted statutory protections against step-down clauses, plaintiff's personal auto insurance carrier filed a motion for reconsideration of the order granting Federal partial summary judgment. After considering the relevant law, the Law Division granted the motion for reconsideration, and reversed its previous ruling. In a memorandum of opinion, the court held that S-1666 should be applied retroactively to any case pending or "in the pipeline," at the time of the statute's passage.

II
Our analysis will be governed by well-settled rules of statutory interpretation. We start by acknowledging that, in the absence of a clear indication that the Legislature intended retroactive application, a statute dealing with substantive rights should be given prospective application. Gibbons v. Gibbons, 86 N.J. 515, 521-22, 432 A.2d 80 (1981). There are sound public policy considerations underpinning this preference for prospective application:
This preference is based on our long-held notions of fairness and due process. Id. at 522, 432 A.2d 80; see Landgraf v. USI Film Prods., 511 U.S. 244, 266, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229, 253 (1994) ("The Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation. . . ."); Rothman v. Rothman, 65 N.J. 219, 225, 320 A.2d 496 (1974) ("[R]etroactive application . . . may diminish in value or totally destroy an individual's right, whether in property as such or arising out of contract, provided that the public interest to be promoted sufficiently outweighs in importance the private right to be impaired.").
[Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45-46, 947 A.2d 1228 (2008).]
*1073 Here, the Legislature did not provide any indication as to how to apply the step-down clause prohibition reflected in S-1666. We are thus required to presume that the Legislature intended for its provisions to be applied prospectively. Ibid.
Further, we note the "well-established canon of statutory interpretation [ ] that the Legislature `is presumed to be aware of judicial construction of its enactments.'" Johnson v. Scaccetti, 192 N.J. 256, 276, 927 A.2d 1269 (2007) (quoting DiProspero v. Penn, 183 N.J. 477, 492-93, 874 A.2d 1039 (2005)). Thus, the Legislature is deemed to have been fully aware that, if it desired S-1666 to be applied retroactively, it should have expressly provided for such application in the amendment's text. See ibid. Given this presumed knowledge of our canons of statutory interpretation, the Legislature's silence on the question of retroactivity here is akin to a legislative flare, signaling to the judiciary that prospective application is intended.
Mindful of this analytical presumption against retroactivity, we next consider whether the amendment falls within any of the three judicially crafted categories favoring retroactivity. These are: (1) the Legislature has expressed, either explicitly or implicitly, its intent that the statute apply retroactively; (2) the statute is "curative"; or (3) the expectations of the parties warrant the retroactive application of the statute.[2]Gibbons, supra, 86 N.J. at 522-23, 432 A.2d 80.
In our view, none of these factors militate in favor of retroactivity here. As discussed, the first factor is inapplicable on its face. Neither the statute nor the accompanying legislative statement addresses the question of retroactivity. We next consider the "curative" factor.
In deciding whether a statute is to be given retroactive effect, the "curative" factor has a specific and carefully limited role. As explained by Judge (now Justice) Long in Kendall, supra:
Under [the "curative"] exception, an amendment to a statute can be given retroactive effect if it is designed merely to carry out or explain the intent of the original statute. Such application is consistent with the general rule that statutes are ordinarily prospective unless the Legislature indicates otherwise.
[219 N.J.Super. at 287, 530 A.2d 334.]
Here, the "curative" factor is inapplicable because, by reversing the Supreme Court's holding in Pinto, the Legislature was not correcting or "curing" a judicial misinterpretation of an existing statute. S-1666 merely disallows the use and enforceability of a contractual clause, which the Supreme Court in Pinto, supra, found to be an issue of "insurance contract interpretation." 183 N.J. at 407, 874 A.2d 520.
Stated differently, the S-1666 amendment expresses, for the first time, the public policy position of the Legislature on the propriety of step-down clauses; the prohibitory language in the amendment does not clarify or expand upon a preexisting statutory provision, which the Court in Pinto may have overlooked or misunderstood. Simply stated, S-1666 expresses legislative disapproval of a contractual provision in a contract of insurance, found permissible by the Supreme Court in Pinto under the common law right of freedom to contract. Thus, by *1074 definition, an amendment intended as a derogation of the common law cannot be said to "cure" a judicial misapprehension of a legislative act.
This is in sharp contrast with the Court's holding in 2nd Roc-Jersey Associates v. Morristown, 158 N.J. 581, 605, 731 A.2d 1 (1999), where the Court found the amendment in that case qualified for the "curative" exception because it was adopted in direct response to an Appellate Division decision, "to remedy what the Legislature perceived as a misapplication of the law." The facts in 2nd Roc-Jersey Associates illustrate the point.
N.J.S.A. 40:56-65 to -89 authorized municipalities to establish Special Improvement Districts (SIDs). As originally adopted, the statute defined a SID as "an area within a municipality designated by municipal ordinance as an area in which a special assessment on all property within the district shall be imposed." 2nd Roc-Jersey Associates, supra, 158 N.J. at 587, 731 A.2d 1 (quoting N.J.S.A. 40:56-66(b)). In 1993, the Town of Morristown enacted an ordinance establishing a SID which specifically exempted residential property from the SID special assessment. Ibid.
In 1994, in an unrelated unpublished opinion, Gonzalez v. Borough of Freehold, No. A-3476-92 (App. Div. June 30, 1994), we "invalidated the provision of a municipal SID ordinance that exempted residential properties because the provision violated the statutory definition of a SID." Ibid. In response to our holding construing this statutory definition, the Legislature enacted L. 1995, c. 170, amending N.J.S.A. 40:56-66(b) to expressly permit municipalities to exempt residential properties. Id. at 588, 731 A.2d 1.
In finding this amendment to be "curative," and therefore subject to retroactive application, the Supreme Court gave the following explanation:
The 1995 amendment qualifies under the curative exception for retroactive application. It was enacted in direct response to the Appellate Division's Gonzalez decision to remedy what the Legislature perceived as a misapplication of the law. The amendment did not alter the act in any substantial way, but merely clarified the legislative intent behind the act. The report of the Assembly Local Government Committee, appended to the Assembly Bill, states: "this legislation clarifies that a municipal ordinance establishing a[SID] may exempt residential properties . . . from the assessment." Assembly Local Government Committee, Statement to Assembly Bill No. 2260, at 2 (Dec. 12, 1994). The Assembly Statement to A-2260 was subsequently enacted as L. 1995, c. 170.
[Id. at 605, 731 A.2d 1 (alteration in original).]
Thus, there is a clear and significant difference between an amendment intended to correct a judicial misinterpretation of an existing legislative act and one that simply improves upon an existing statutory scheme, as a matter of public policy. As Judge Long explained in Kendall, supra:
Nor can the curative exception be invoked merely because an amendment is deemed to better a statutory scheme. Presumably, each time the Legislature amends a statute it acts in good faith and seeks, by the amendment, to improve the scheme. If this was all that was required in order to meet the curative exception, every amendment would automatically be subject to retroactive application and the exception would engulf the rule of prospectivity. This cannot be countenanced. As we have observed, there are reasons based on considerations of fairness for the rule of *1075 prospectivity. This is why the exceptions to the rule have been carefully circumscribed. To consider an enactment which "improves" the statutory scheme (in itself a painfully subjective determination) as meeting the curative exception is at odds with the fundamental principal of fairness that new laws should not affect situations which predated them.
[219 N.J.Super. at 289, 530 A.2d 334.]
The third and final factor under Gibbons, supra, relates to the expectations of the parties. 86 N.J. at 523, 432 A.2d 80. Here, the parties' expectations must be gauged by the legal principles governing the common law right of freedom to contract prevailing during the time of the accident.
Plaintiff's accident occurred on April 13, 2004. Approximately four months earlier, on January 21, 2004, we published our decision upholding the enforceability of step-down clauses in business auto policies. Pinto v. N.J. Mfrs. Ins. Co., 365 N.J.Super. 378, 839 A.2d 134 (App.Div.2004), aff'd, 183 N.J. 405, 874 A.2d 520 (2005). The Supreme Court granted certification on April 26, 2004,[3] and affirmed our holding on June 6, 2005. Pinto, supra, 183 N.J. 405, 874 A.2d 520. Thus, the prevailing state of the law at the time of the accident favors a prospective application of the S-1666 amendment. In this light, Federal Insurance had a reasonable basis to believe that its contractual provisions were proper and enforceable; by contrast, plaintiff's prospect for success was dependent upon overturning a published decision of this court. Thus, it cannot be said that the reasonable expectations of the parties at the time of the accident favor retroactive application of S-1666.

III
The judgment of the Law Division giving retroactive effect to N.J.S.A. 17:28-1.1(f) is reversed. Applying well-established principles of statutory construction, we hold that this statutory amendment must be applied prospectively, commencing from the date of its passage by the Legislature. Any UM/UIM claim predicated upon an accident which predates the adoption of N.J.S.A. 17:28-1.1(f) must be governed by the legal principles articulated by the Supreme Court in Pinto, supra, 183 N.J. 405, 874 A.2d 520.
Reversed and remanded.
NOTES
[1] Hackensack University Medical Center was improperly pleaded as Hackensack Medical Center. Federal Insurance Company was improperly pleaded as Chubb Group of Insurance Companies.
[2] Our Supreme Court has also recognized a fourth factor, referred to as "ameliorative." In re Smigelski, 30 N.J. 513, 527, 154 A.2d 1 (1959). However, the application of this factor is limited to determining whether a penal statute should be given retroactive effect to decrease a criminal or quasi-criminal penalty. Kendall v. Snedeker, 219 N.J.Super. 283, 286-87, 530 A.2d 334 (App.Div.1987).
[3] Pinto v. N.J. Mfrs. Ins. Co., 180 N.J. 151, 849 A.2d 184 (2004).