22 A.3d 975 (2011)
421 N.J. Super. 107
Barbara A. BOTIS, Plaintiff-Respondent,
v.
ESTATE OF Gary G. KUDRICK, Defendant/Third-Party Plaintiff-Appellant,
v.
Wells Fargo Bank, Third-Party Defendant.
Docket No. A-5562-09T4
Superior Court of New Jersey, Appellate Division.
Argued December 13, 2010.
Decided April 21, 2011.
*977 Georgia M. Fraser argued the cause for appellant (William P. Deni, Sr., Flemington, attorney; Ms. Fraser, of counsel and on the brief).
Megan S. Murray argued the cause for respondent (Paone & Zaleski, Woodbridge, attorneys; Ms. Murray, of counsel and on the brief).
Before Judges RODRÍGUEZ, GRALL and LeWINN.
The opinion of the court was delivered by
LEWINN, J.A.D.
Effective January 18, 2010, the statute of frauds was amended to include palimony agreements among the types of agreements that must be in writing and signed by the parties in order to be enforceable. N.J.S.A. 25:1-5(h); L. 2009, c. 311, § 1. This case requires us to determine whether to accord that amendment retroactive effect in a case filed against the promisor's Estate prior to the effective date of the amendment on an alleged agreement enforceable when the complaint was filed. We conclude that the amendment applies prospectively and affirm the June 9, 2010 order denying the Estate's motion to dismiss the complaint, which is before us on leave granted.[1]
The June 9, 2010 order also denied the Estate's motion to amend its counterclaim to include claims against plaintiff for fraud, perjury, attorneys fees and punitive damages. We affirm that ruling as well.
We summarize the pertinent background from the pleadings and motion papers. In her palimony complaint, plaintiff alleged that she and Gary G. Kudrick (hereinafter decedent) first met in high school in or about 1954. They subsequently married other people, but when their respective marriages endeddecedent's in 1972 by divorce and plaintiff's by the death of her husband in 1974they "commenced a permanent relationship." Decedent moved into plaintiff's Howell residence in 1976, but continued to maintain his residence in Holmdel.
Plaintiff further alleged that she and decedent lived together "in a marriage-like relationship" for the next eight years and in 1984 made a joint decision to sell her residence and move together into decedent's "newly expanded residence" in Holmdel; plaintiff asserted that she invested $17,000 from the proceeds of the sale of her residence into "furnishing the Holmdel ... residence." Although they never married, plaintiff alleged that they "cohabited at the Holmdel address and shared a life as if they were husband and wife[,]" and "presented themselves as a couple to their family and friends, and ... were dependent on each other for love, affection, and support."
In 1995, plaintiff asserted, the parties jointly purchased a residence in Waretown; plaintiff's name was originally on the deed but in 1996 title was transferred to decedent alone, for no consideration, "for income tax purposes beneficial to [decedent]." Decedent "assure[d] ... plaintiff that this residence would always be hers."
*978 Plaintiff also claimed that she became dependent upon decedent for support because of his "superior financial situation," and that he "promised [her] that he would always take care of her and that in the event of his death, she would be cared for consistent with the lifestyle that they shared together." After living together in this relationship "for approximately [thirty-two] years," decedent "became stricken with cancer," and plaintiff "cared for him and tended to his needs." Shortly before decedent's death, plaintiff first learned that no provision had been made for her in his will and that his entire estate had been left to his daughter and grandchildren, "contrary to [his] prior representations to [her]." Based on these allegations, plaintiff sought palimony, the transfer of title of both the Holmdel and Waretown residences to her, and other related relief.
The Estate filed an answer essentially denying all allegations in the complaint and asserting twelve affirmative defenses, including that "plaintiff was not in a marital-type relationship with the decedent." The Estate also filed a counterclaim, alleging that plaintiff (1) made unauthorized withdrawals from a home equity line on the Waretown residence; (2) removed belongings and furnishings from the Holmdel residence, including decedent's financial documents; and (3) refused requests to return the financial documents.
Various pre-trial proceedings ensued between November 2008 and March 29, 2010, when the Estate moved to dismiss the complaint based upon the amendment to the statute of frauds and to amend its counterclaim. We need not discuss those intervening proceedings. Suffice it to say the parties' respective positions on all issues are entrenched and highly adversarial.
The judge heard arguments on the motion on April 30, 2010, and rendered an oral decision from the bench on June 9, 2010.
The judge determined as a matter of law that N.J.S.A. 25:1-5(h) applied prospectively in this case for the following reasons: (1) language in the law that "[t]his act shall take effect immediately" indicated a legislative intent that its application be prospective; (2) our courts have "`long followed a general rule of statutory construction that favors prospective applications of [a] statute[,]'" citing Cruz v. Central Jersey Landscaping, 195 N.J. 33, 45, 947 A.2d 1228 (2008); (3) since plaintiff's "claim was filed long before the statute was enacted, ... this is not a claim that would be barred by the enactment of this statute"; (4) "it has been the law in th[is] State ... for [thirty] years ... that there is a right to support and it's found in principles of contract and those contractual rights may be either expressed or implied[,]" citing Kozlowski v. Kozlowski, 80 N.J. 378, 384, 403 A.2d 902 (1979); (5) "the Legislature cannot, without notice and an opportunity to cure, extinguish these well established rights"; and (6) decedent "has no ability to comply with the recently enacted statute since he is dead. Thus he can't do that which the Legislature is mandating after his death." The judge concluded that
the Legislature was sending a very clear message for claims that are to be brought subsequent to January of 2010. But for those individuals such as the plaintiff who have in good faith relied upon established case law for [thirty] years, a retroactive application would... be a manifest injustice.
... [A]s an aside, the [c]ourt notes that an argument could be advanced on behalf of the plaintiff[ ] that partial performance itself is a defense under the statute of frauds. And here [plaintiff] has clearly performed her side of the *979 bargain she said the parties agreed upon.
And the [c]ourt finds a retroactive application here was neither intended nor would result in [anything] other than a violation of plaintiff's due process rights and a manifest injustice to [plaintiff].
[(Emphasis added).]
The judge then denied the Estate's request to amend its counterclaim, stating:
This is a case that's ... going on two years of age, and there's no reason to amend a[ ] ... counterclaim ... at this late stage.
... [T]he complaint of plaintiff and the facts in this case, certainly no well reasoned analysis of the case would find this to be frivolous or trivial, and there's nothing that I have found to find the plaintiff to be fraudulent in any statements so as to give rise to a cause of action.
Plaintiff's complaint may not be meritorious when all of the facts are presented, and this [c]ourt is not going to prejudge the case. But I can say unequivocally based on the undisputed facts in this case, that it is not a frivolous complaint....
On appeal, the Estate contends that the trial judge erred by (1) failing to consider the legislative and curative intent of the statute; (2) finding that retroactive application would be unconstitutional and would result in a manifest injustice to plaintiff; (3) "incorrectly characteriz[ing] the outcome" if plaintiff's palimony claim was dismissed; (4) failing to apply the proper legal standards to plaintiff's palimony claim; and (5) finding that plaintiff had a "partial performance" defense to the statute of frauds. The Estate also asserts that the judge incorrectly denied its motion to amend its counterclaim.
Initially, we note our standard of review. The primary question presented is whether the Legislature intended courts to apply N.J.S.A. 25:1-5(h) retroactively. Cruz, supra, 195 N.J. at 42-43, 947 A.2d 1228. That is a question of law that we review de novo. In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Palimony is "a claim for support between unmarried persons[,]" Devaney v. L'Esperance, 195 N.J. 247, 253, 949 A.2d 743 (2008), and our courts have regarded it as a cognizable legal claim for over thirty years. Kozlowski, supra, 80 N.J. at 384, 403 A.2d 902. A palimony obligation has even been held enforceable against the estate of the promisor. In re Estate of Roccamonte, 174 N.J. 381, 395-97, 808 A.2d 838 (2002). The operative principle of a palimony claim is that "the formation of a marital-type relationship between unmarried persons may, legitimately and enforceably, rest upon a promise by one to support the other." Id. at 392, 808 A.2d 838. "[T]he entry into [a marital-type] relationship and then conducting oneself in accordance with its unique character is consideration" warranting enforcement of a promise of support. Id. at 393, 808 A.2d 838. Such a promise, whether "express or implied," if "coupled with a marital-type relationship... support[s] a valid claim for palimony." Devaney, supra, 195 N.J. at 258, 949 A.2d 743.
Until January 2010, our statutes were silent on the subject of palimony. This amendment to the statute of frauds thus represents the first, and only, legislative action with respect to the issue.
*980 To discern the Legislature's intent courts "look first to the plain language of the amendment" and if the language is not clear to other "interpretative aids" such as legislative history. Cruz, supra, 195 N.J. at 43, 947 A.2d 1228. The statute of frauds identifies various "agreements [and] promises" upon which "[n]o action shall be brought ... unless the agreement or promise, ... or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized." N.J.S.A. 25:1-5. The 2010 amendment adds the following to the statute's purview:
h. A promise by one party to a non-marital personal relationship to provide support or other consideration for the other party, either during the course of such relationship or after its termination. For the purposes of this subsection, no such written promise is binding unless it was made with the independent advice of counsel for both parties.
[N.J.S.A. 25:1-5(h).]
The law states that it "shall take effect immediately." L. 2009, c. 311, § 2. That language provides "no clear indication" as to whether the Legislature intended the amendment "to apply to claims that were pending on the date of its enactment." Bunk v. Port Auth., 144 N.J. 176, 194, 676 A.2d 118 (1996). The legislative history explains that the amendment is "intended to overturn recent `palimony' decisions by New Jersey courts," specifically referring to Devaney, Roccamonte and Kozlowski. Senate Judiciary Committee, Statement to S.2091 (February 9, 2009). That statement is equally unclear as to the date on which the Legislature intended to bar actions based on oral palimony agreements. The only indication of intention with respect to prospective versus retrospective application is the suggestion implicit in the language of the statute amended, which provides no "action shall be brought" and does not purport to address pending actions.
Absent a clear indication of legislative intent, our courts "`have long followed a general rule of statutory construction that favors prospective application of statutes.'" Cruz, supra, 195 N.J. at 45, 947 A.2d 1228 (quoting Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981) (footnote omitted)). A statute will be given retroactive effect only (1) where the Legislature has declared such an intent, either explicitly or implicitly, (2) when an amendment is curative, or (3) "when the expectations of the parties so warrant." Ibid. (citing Gibbons, supra, 86 N.J. at 522-23, 432 A.2d 80). As noted above, there is no indication of legislative intention favoring retroactive application. Accordingly, we turn to consider whether the second or third conditions favoring retroactive application apply.
With respect to the reasonable expectations of the parties, where, as here, an amendment is enacted to a statute that mandates that "[n]o action shall be brought" unless certain conditions are satisfied, we have determined that the critical factor in the "prospective/retroactive application" inquiry is whether the parties could have expected and, therefore, complied with the conditions. In Serrano v. Gibson, 304 N.J.Super. 314, 318-20, 700 A.2d 390 (App.Div.1997), we addressed the retroactivity of a 1994 amendment to the Tort Claims Act that expanded a plaintiff's obligation to present the public entity with a notice of claim within ninety days of the accrual of a the cause of action to include claims against public employees. See N.J.S.A. 59:8-3; N.J.S.A. 59:8-8(a).
The legislative history explained that the amendment was "intended to reverse" the holding in Chatman v. Hall, 128 N.J. 394, *981 419-20, 608 A.2d 263 (1992), in which "the Supreme Court reaffirmed that the ninety-day notice requirement of the ... Act was not applicable to claims against public employees." Serrano, supra, 304 N.J.Super. at 315, 700 A.2d 390.
Relevant to the parties' reasonable expectations, we found
not only at the time of the accident, but during the critical subsequent ninety-day period, the notice obligations of N.J.S.A. 59:8-3 and ... -8, which now must be met during that time period as to public employees, did not exist. Plaintiff[ ] could not have known [she] could lose [her] then viable cause of action ... by not complying with the notice provisions that would be triggered by subsequent legislation.
[Id. at 318, 700 A.2d 390.]
Relying on those facts, we concluded that the parties' reasonable expectations did not warrant retroactive application. We reasoned that under the law in effect at the time of the injury, the public employee "could not have had a reasonable expectation of that the ninety-day notice could be relied upon" and the plaintiffs "could not have anticipated that their cause of action would be lost through noncompliance." Id. at 319, 700 A.2d 390.
The same is true here, in this action on a palimony agreement. With respect to contracts and agreements, the parties' relevant expectations are generally those they had at the time of the agreement. See 73 Am.Jur.2d Statute of Frauds § 429 (2010) (noting that prospective application of the statute of frauds is favored because of constitutional restrictions on impairment of contractual rights).
In this case, (1) decedent, the putative palimony promisor, died almost one-and-a-half years before the effective date of the statutory amendment, and (2) plaintiff filed her complaint shortly after his death and about more than a year before the statute was amended. As the trial judge noted, and to restate the obvious, decedent was singularly unable to comply with the new requirements. More importantly, prior to this amendment and at the time of their agreement, case law supported a mutual expectation that their agreement was enforceable without regard to a writing executed after consultation with an attorney. Neither plaintiff nor decedent could reasonably have anticipated the prerequisites to enforcement of a palimony promise during the time when they were in a position to create such a document.
We cannot agree with the Estate that this amendment should be given retroactive effect as "curative or ameliorative." "Under the curative exception to prospective applicability, a new law is given retroactive effect `if it is designed merely to carry out or explain the intent of the original statute.'" Serrano, supra, 304 N.J.Super. at 319, 700 A.2d 390 (quoting Nelson v. Board of Educ., 148 N.J. 358, 370, 689 A.2d 1342 (1997)).
Affording a statutory amendment retroactive effect based upon its curative intent is appropriate where the "cure" is addressed to prior legislation, not to the decisions of our courts.
The "curative" exception comes into play when a statute amends a previous law which is unclear or which does not effectuate the actual intent of the Legislature in adopting the original act. The purpose of a curative amendment is merely to remedy a perceived imperfection in or misapplication of a statute. The amendment explains or clarifies existing law and brings it into harmony with what the Legislature originally intended.

*982 [In re D.C., 146 N.J. 31, 51, 679 A.2d 634 (1996) (internal quotations omitted) (emphasis added).]
Insofar as the bill was "intended to overturn... [the] palimony decisions [in Devaney, Roccamonte and Kozlowski] by requiring that any such contract must be in writing and signed by the person making the promise," Committee Statement to S. 2091, it was not to rectify or clarify statutory law but to overturn case law. See Serrano, supra, 314 N.J.Super. at 319, 714 A.2d 970 (noting that the Legislature's intent to "reverse" a decision of the Supreme Court was neither "ameliorative or curative").
Until the January 2010 enactment of N.J.S.A. 25:1-5(h), no statute addressed palimony claims. Rather, as noted, such claims were recognized by our courts as a matter of contract law. Kozlowski, supra, 80 N.J. at 384, 403 A.2d 902. "[B]y definition, an amendment intended as a derogation of the common law cannot be said to `cure' a judicial misapprehension of a legislative act." Olkusz v. Brown, 401 N.J.Super. 496, 504, 951 A.2d 1069 (App.Div.2008). A new statute will not be deemed "curative" simply because the legislative history of that statute reflects disapproval of a contractual provision previously found permissible by our courts based upon common law contract principles. Id. at 503-04, 951 A.2d 1069.
We turn to the Estate's contention that plaintiff would still have a viable cause of action for partition of the contested real property if her palimony claim were dismissed.
"[P]ersons who have engaged in a joint venture to purchase property in which they reside, are entitled to seek a partition" when "their joint enterprise comes to an end ... irrespective of how title is formally held." Mitchell v. Oksienik, 380 N.J.Super. 119, 127, 880 A.2d 1194 (App.Div.2005) (internal citations omitted). "Among the remedies available on partitionwhere other modes of relief are not practicalis a forced sale of the property and division of the net proceeds between the parties." Id. at 128, 880 A.2d 1194.
However, where an agreement exists between an unmarried couple giving one party "a continued right to occupy ... the jointly-owned home," "a partition by way of sale to third parties is not an appropriate remedy." Olson v. Stevens, 322 N.J.Super. 119, 123, 730 A.2d 432 (App.Div.1999). "Agreements about property jointly held by cohabitants are material in actions concerning its division" and "may be specifically enforced when that remedy is appropriate." Houseman v. Dare, 405 N.J.Super. 538, 545-46, 966 A.2d 24 (App.Div.2009) (citing Olson, supra, 322 N.J.Super. at 123, 730 A.2d 432). Unmarried couples "remain free to enter into valid and enforceable agreements concerning... property rights." Kozlowski, supra, 80 N.J. at 389, 403 A.2d 902 (Pashman, J., concurring).
Further, while a non-married individual may not assert a claim for equitable distribution of individually-owned assets because "equitable distribution is awarded only in actions for divorce," Connell v. Diehl, 397 N.J.Super. 477, 496, 938 A.2d 143 (App.Div.) (quoting Kozlowski, supra, 80 N.J. at 383, 403 A.2d 902), certif. denied, 195 N.J. 518, 950 A.2d 905 (2008), where the home is a "substantial asset," the "determination of ... support pursuant to the alleged [palimony] agreement... may impact on the ownership and occupancy of the house." Olson, supra, 322 N.J.Super. at 123, 730 A.2d 432. Therefore, "[a]s a matter of judicial economy, all issues between the parties should be resolved in [one proceeding], including disputes over entitlement to property, as *983 long as actual notice is provided as to the specific relief sought." Mitchell, supra, 380 N.J.Super. at 131, 880 A.2d 1194. The Estate's position runs counter to these principles.
As we have determined that retroactive application of the 2010 amendment to the statute of frauds is inappropriate in this case, we need not address the remaining issues raised by the Estate. R. 2:11-3(e)(1)(E).
We find no error in the judge's observation that plaintiff may have a "partial performance... defense under the statute of frauds," which the judge "note[d]" as "an aside," in his decision. We are satisfied this "note[ ]" by the judge is immaterial to his ultimate conclusion that the amendment to the statute would not apply retroactively. Moreover, the judge alluded to the parties' agreement as one that "[plaintiff] said the parties agreed upon[,]" thereby recognizing that further proofs on the issue were necessary. Clearly, this comment has no relevance to the issues presented here.
Finally, we affirm the denial of the Estate's request to amend its counterclaim for the reasons stated by the judge in his bench decision, which are "based on findings of fact. adequately supported by [the] evidence." R. 2:11-3(e)(1)(A). No further discussion of this issue is warranted. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] No. M-006118-09 (App. Div. June 28, 2010).