# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2912-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.D.,

     Defendant-Appellant,

and

T.B., a/k/a B.D.,

     Defendant,

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
D.A.J.D., a minor.

_____

Submitted February 9, 2022 – Decided March 8, 2022

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0025-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong Dao, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Lynn B. Norcia, Designated Counsel, on the brief).

PER CURIAM

Following a Title 30 guardianship trial, the family court terminated the parental rights of A.D. (Allison)[1] and T.B. (Timothy) to their then five-year-old son D.S.J.D. (David). Allison appeals, whereas the Law Guardian and the Division of Child Protection and Permanency (Division) urge that we uphold the decision.[2] Because we reject Allison's contentions that the Division failed to

---

[1] We use pseudonyms or initials to protect the confidentiality of the participants in these proceedings. R. 1:38-3(d).

[2] Timothy did not participate in any aspect of the litigation and has not filed an appeal.

A-2912-20

meet its statutory burden under the four-prong best interests of the child test, N.J.S.A. 30:4C-15.1(a), by clear and convincing evidence, we affirm.

I.

On March 22, 2017, the Division received a referral from Capital Health Medical Center at Hopewell alleging Allison neglected David, ten months old at the time, and completed a Dodd removal[3] of him on that date. Two days later, the family court upheld the emergency removal and placed David under the care of the Division. Subsequently, in June, David was placed in the home of resource parent, D.J. (Deena), where he currently resides.

After a year of conducting periodic status reviews, the court, on May 24, 2018, accepted the Division's permanency plan to terminate Allison and Timothy's parental rights followed by adoption. Thereafter, the Division changed its position and successfully moved to have the court approve a reunification plan based upon the recommendation of the Division's expert psychologist, David Brandwein, Psy.D., which was "completely dependent on [Allison's] compliance with Division services, proof of sobriety, and

_____

[3] A Dodd removal refers to an emergency removal of a child or children from a home without a court order, under the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82.

maintenance of stable housing and employment." After Allison failed to comply with the reunification plan, the Division revised its position again, which the court approved, seeking termination of parental rights followed by adoption.

During the eight-day guardianship trial over diverse dates, the Division presented testimony from Dr. Brandwein and three of its caseworkers. Allison testified and presented six witnesses, including her sister E.J. (Ellen) and five Division employees. She did not present an expert witness. The Law Guardian did not present any evidence.

Following the trial, Judge Thomas J. Walls, Jr. entered an order terminating parental rights and issued a 124-page decision summarizing the matter's procedural history and detailing the factual findings as to each of the required elements of the best interests of the child standard.

## II.

In reviewing a decision by a trial court to terminate parental rights, we give "deference to family court[s'] fact[-]finding" because of "the family courts' special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). The judge's findings of fact are not disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Id. at 412

A-2912-20

(quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). "[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." N.J. Div. of Youth & Fam. Servs. v. R.L., 388 N.J. Super. 81, 89 (App. Div. 2006).

Judge Walls carefully reviewed the evidence presented, concluding the Division met, by clear and convincing evidence, all the legal requirements to sustain a judgment of guardianship. His written decision tracks the four prongs of the best interests of the child test, N.J.S.A. 30:4C-15.1(a); accords with our prior holdings in In re Guardianship of K.H.O., 161 N.J. 337 (1999), In re Guardianship of D.M.H., 161 N.J. 365 (1999), and N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420 (2012); and is supported by substantial and credible evidence in the record. We, therefore, affirm substantially on the grounds expressed in the judge's comprehensive and well-reasoned decision. We highlight the following analysis of each best interests prongs.

A. Prongs One and Two

As to prong one, the Division must prove "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship." N.J.S.A. 30:4C-15.1(a)(1). "[T]he relevant inquiry focuses on the cumulative effect, over time, of harms arising from the home life provided

by the parent." N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 289 (2007).

"Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights." In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992) (citing In re Guardianship of J.C., 129 N.J. 1, 18 (1992)). As a result, "courts must consider the potential psychological damage that may result from reunification[,] as the 'potential return of a child to a parent may be so injurious that it would bar such an alternative.'" N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 480-81 (App. Div. 2012) (quoting N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 605 (1986)).

"The absence of physical abuse or neglect is not conclusive." A.W., 103 N.J. at 605 (quoting In re Guardianship of R., 155 N.J. Super. 186, 194 (App. Div. 1977)). "A parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." D.M.H., 161 N.J. at 379. "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." Id. at 383.

A-2912-20

As to prong two, the Division must prove "[t]he parent is unwilling or unable to eliminate the harm facing the child[ren] or is unable or unwilling to provide a safe and stable home . . . and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The harm may include evidence that separating the children from their resource parents "would cause serious and enduring emotional or psychological harm." Ibid.[4]

The Division can establish the second prong by proving that a "child will suffer substantially from a lack of stability and a permanent placement[,] and from the disruption of [a] bond" with the resource parents. K.H.O., 161 N.J. at 363. Because they are related, evidence supporting the first prong may also support the second prong "as part of the comprehensive basis for determining the best interests of the child." D.M.H., 161 N.J. at 379.

Allison argues that the Division has not shown she has harmed David nor endangered his health and development. She points to the substantial documentation in the record regarding her visits with David that demonstrate

---

[4] We are aware that on July 2, 2021, the Legislature enacted L. 2021 c. 154, § 9 amending N.J.S.A. 30:4C-15.1(a) pertaining to the standards for terminating parental rights. Specifically, the Legislature amended N.J.S.A. 30:4C-15.1(a)(2), to exclude from consideration in a termination of parental rights case the harm to a child caused from being removed from resource parents.

their strong and affectionate bond, resulting in a positive and appropriate relationship. She argues the judge's legal conclusion that the Division satisfied the first prong should be given no deference because it was "unsupported by substantial credible evidence."

Allison's arguments are not an accurate reflection of the record. The judge essentially found all witnesses gave credible testimony, as their recollections were consistent with documentary evidence submitted by the Division. However, the credit attached to Allison and her witnesses does not obscure that the record is replete with Allison missing numerous in-person and telephone visits with David; being dismissed from several court-ordered substance abuse, mental health treatment, and parenting programs due to sporadic attendance; and her inability to maintain stable housing and employment during the three years of litigation, despite being offered support by the Division.

After initially seeking termination of Allison's parental rights, the Division changed its position and gave her the opportunity to reunify with David. Because she failed to comply with the services offered by the Division and ordered by the judge, the Division did an about face and renewed its petition for termination of parental rights. This constitutes a significant indication of Allison's inability to provide for David's needs.

A-2912-20

In his second and final psychological and bonding evaluation report,[5] Dr. Brandwein opined that David was bonded to both his mother and the resource parent, but stated,

> [Allison's] lack of consistent personal and psychological stability renders her bond with [David] unable to support [him] throughout the remainder of his childhood and into adolescence and adulthood. Despite [Allison] being given a chance by this examiner and the court to be reunified with [David], [she] failed to take advantage of this chance by complying with Division services and this examiner's recommendations.

This opinion was not refuted.

Accordingly, there was clear and convincing evidence to support the judge's finding that a continued parental relationship with Allison would harm David.

B. Prong Three

As to prong three, the Division is required to make "reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home[,] and the court [will] consider[] alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3). This prong

---

[5] Dr. Brandwein's initial report prompted the Division to alter its original plan to terminate parental rights. He diagnosed Allison with major depressive disorder with mixed features, moderate, in partial remission, as well as borderline and narcissistic personality traits.

A-2912-20

"contemplates efforts that focus on reunification of the parent with the child and assistance to the parent to correct and overcome those circumstances that necessitated the placement of the child into foster care." K.H.O., 161 N.J. at 354.

Within the meaning of prong three, "reasonable efforts" include, but are not limited to:

> (1) consultation and cooperation with the parent in developing a plan for appropriate services;
>
> (2) providing services that have been agreed upon, to the family, in order to further the goal of family reunification;
>
> (3) informing the parent at appropriate intervals of the child's progress, development, and health; and
>
> (4) facilitating appropriate visitation.
>
> [N.J.S.A. 30:4C-15.1(c).]

"Whether particular services are necessary in order to comply with the [reasonable] efforts requirement must . . . be decided with reference to the circumstances of the individual case before the court . . . ." D.M.H., 161 N.J. at 390.

The Division

> must encourage, foster and maintain the bond between the parent and child as a basis for the reunification of

the family. [It] must promote and assist in visitation and keep the parent informed of the child's progress in foster care. [It] should also inform the parent of the necessary or appropriate measures he or she should pursue in order to continue and strengthen that relationship and, eventually, to become an effective caretaker and regain custody of his or her children.

[Ibid. (citing N.J.S.A. 30:4C-15.1(c)).]

A court is required to consider alternatives to the termination of parental rights. N.J.S.A. 30:4C-15.1(a)(3). "[A]ssessment of relatives is part of the Division's obligation to consult and cooperate with the parent in developing a plan for appropriate services that reinforce the family structure." N.J. Div. of Youth & Fam. Servs. v. K.L.W., 419 N.J. Super. 568, 583 (App. Div. 2011).

N.J.S.A. 30:4C-12.1(a) requires the Division to initiate a search within thirty days of accepting a child into its care or custody for relatives who may be willing and able to provide the care and support required for the child. The Division must assess each interested relative and, if it determines that the relative is unable or unwilling to care for the child, inform the relative of its reasons for a denial of placement. N.J.S.A. 30:4C-12.1(a)-(b). Also, in July 2021, L. 2021, c. 154, § 4 amended the laws pertaining to the Kinship Legal Guardianship Act, N.J.S.A. 3B:12A-1 to -7, by deleting "and (b) adoption of the child is neither feasible nor likely" under N.J.S.A. 3B:12A-6(d)(3).

A-2912-20

"It is the policy of [the Division] to place, whenever possible, children with relatives when those children are removed from the custody of their parents." N.J. Div. of Youth & Fam. Servs. v. K.F., 353 N.J. Super. 623, 636 (App. Div. 2002). "The Division's statutory obligation does not permit willful blindness and inexplicable delay in assessing and approving or disapproving a relative known to the Division . . . ." K.L.W., 419 N.J. Super. at 582. It cannot ignore relatives "based upon an arbitrary, preordained preference for the foster placement" and "must perform a reasonable investigation of . . . relatives that is fair, but also sensitive to the passage of time and the child's critical need for finality and permanency." N.J. Div. of Youth & Fam. Servs. v. J.S., 433 N.J. Super. 69, 87 (App. Div. 2013).

Allison's arguments are based on an accurate reflection of the record. She asserts that the Division has not meet its burden of demonstrating a reasonable effort to reunify her with David and provide services to help her, because David was removed from their Trenton home and placed with Deena, who lived more than seventy miles away in Paterson.

Allison further argues the judge's finding that there was no alternative plan to termination because Deena wanted to adopt was not established because Deena did not testify. According to Allison, based on L. 2021, c. 154's July

12

2021 amendments to the Kinship Legal Guardianship Act, N.J.S.A. 3B:12A-1 to -7, the Division should "always place children with relatives and protect and preserve parental rights whenever possible." She contends the amendment is meant to be applied retroactively because the Division's underlying policy has always been to place children with families, and the plain language of the bill supports retroactivity. She argues the judge's decision that the Division adequately considered the alternatives before terminating her parental rights was "in error and incongruent with" recent legislation.

Before addressing the merits of Allison's argument, we reject her argument that the recent amendments to N.J.S.A. 3B:12A-1 should be applied retroactively. First, there is no indication within the statute's language or legislative history that the Legislature meant for the amendments to have a retroactive effect, nor is it "necessary to make the statute workable or to give it the most sensible interpretation." Gibbons v. Gibbons, 86 N.J. 515, 522 (1981); see also Olkusz v. Brown, 401 N.J. Super. 496, 501-02 (App. Div. 2008) (holding that when the Legislature is silent on the matter of retroactivity, it is a signal to the judiciary that it intended a prospective application of a statute or amendment). Second, the Legislature gave no guidance in the amendments that would assist the Division in applying the changes retroactively in terms of

13

timing or methodology. Third, the end of the amendments provides they were enacted on July 2, 2021, suggesting they would take effect immediately. Our Supreme Court recently held that an immediate or future effective date within a statute demonstrates that the Legislature sought prospective application only. Pisack v. B & C Towing, Inc., 240 N.J. 360, 370-71 (2020). And finally, there is no evidence in the Legislative history that pipeline retroactivity was intended or that the Legislature wanted retroactivity for only certain matters such as pending direct appeals.

Yet, even if the amendments had a retroactive effect, Allison's arguments are not supported in the record. When David was removed from Allison, the Division spoke to Timothy, Ellen, Allison's godmother L.S. (Lucy), and B.H. (Bonnie), a close friend of Allison, as possible placement options for David. Both Ellen and Bonnie had recent drug charges that excluded them from placement options. Despite being told she would receive additional money from the Division to care for David, Lucy indicated that her current home was too small to take in another child and financial support was insufficient. As for Timothy, he did not want to care for his son because he was unemployed and caring for his mother. Indeed, Allison does not indicate there was any viable family member or friend with whom David could have been placed, nor were

14

there any challenges to the Division's determinations that those considered were unfit. Ellen's newfound claim at trial that she was willing to care for David was undermined by the fact that he was with Deena for three years, and such a change would be disruptive to the stability he gained under her care.

As for services offered to Allison, the Division amply provided them to further reunification. She was offered substance abuse treatment, mental health counseling, parenting classes, and psychological and bonding evaluations, all of which, as noted, she failed to comply. The fact that David was placed in Paterson made it more difficult for her to visit him. There is, however, no indication in the record that a more convenient placement was available, and despite being afforded numerous opportunities to visit him and being provided financial assistance to do so, her attendance was sporadic. Thus, the Division met this prong by clear and convincing evidence, and the trial court's finding should not be disturbed.

C. Prong Four

Under prong four, the Division must demonstrate by clear and convincing evidence that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). The prong characterizes a child's need for permanency as "an important consideration." M.M., 189 N.J. at 281. "The

15

question to be addressed under that prong is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O., 161 N.J. at 355. In order to weigh any potential harm from terminating parental rights against a child's separation from his or her foster parents, a court must consider expert testimony on the strength of each relationship. J.C., 129 N.J. at 25. "[W]here it is shown that the bond with foster parents is strong and, in comparison, the bond with the natural parent is not as strong, that evidence will satisfy . . . N.J.S.A. 30:4C-15.1(a)(4) . . . ." K.H.O., 161 N.J. at 363.

Allison argues there was more than enough evidence to show that based on the bond between her and David, termination of her parental rights was not in David's best interests, and that the judge erred when he disregarded the mother-and-son bond and attachment. She argues David would clearly suffer "permanent emotional harm" from the unnecessary destruction of the mother-child relationship.

We again disagree with Allison's assessment of the record, finding no merit to her argument. In ruling the Division satisfied prong four, the judge relied upon Dr. Brandwein's opinion that, while Allison and David did have a

16

bond, David and his resource parent also have a bond that had strengthened as years passed. In fact, Dr. Brandwein found David's bond tilted more towards Deena because she had provided him with personal and emotional stability, and did not have a "record with having . . . angry emotional outbursts" as Allison did. The doctor further found that given Allison's conduct throughout the litigation, there was a high likelihood her inability to prioritize David above herself would cause more harm to David and perpetuate instability. Significantly, Dr. Brandwein's opinion that terminating Allison's parental rights would do more good than harm was uncontroverted.

In sum, we conclude the judge's termination of Allison's parental rights was in David's best interests.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION