62 A.3d 310

BEVERLY MAEKER, PLAINTIFF–RESPONDENT, v.
WILLIAM S. ROSS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 12, 2012—Decided February 4, 2013.

Before Judges AXELRAD, SAPP–PETERSON and HAAS.

*Eric S. Solotoff* argued the cause for appellant (*Fox Rothschild, LLP,* attorneys; *Mr. Solotoff,* of counsel and on the briefs; *Lisa Steirman Harvey* and *Sandra C. Fava,* on the briefs).

*Angelo Sarno* argued the cause for respondent (*Snyder & Sarno, LLC,* attorneys; *Mr. Sarno,* of counsel and on the brief; *Jill D. Turkish* and *Ashley R. Vallillo,* on the brief).

The opinion of the court was delivered by

SAPP–PETERSON, J.A.D.

In this appeal, we granted defendant, William Ross, a stay and leave to appeal the January 13, 2012 interlocutory order of the Family Part judge denying his motion to dismiss plaintiff, Beverly Maeker's palimony complaint and granting her cross-motion for pendente lite support, which the motion judge fixed at $6000 per month. The motion judge found that plaintiff's complaint was not barred by the 2010 amendment to the Statute of Frauds, *N.J.S.A.* 25:1–5(h) (Amendment), requiring a writing memorializing palimony agreements and independent advice of counsel for each party in advance of executing any such agreement. We reverse and hold that the Amendment is enforcement legislation that addresses under what circumstances a claimed breach of a palimony agreement may be enforced irrespective of when the purported agreement was entered.

## I.

According to plaintiff's complaint, she and Ross met in Brooklyn and began dating in 1998. Shortly thereafter, as the relationship progressed, they started living together. They moved from Brooklyn to Bedminster, where they rented a home. From there, they moved to a home they jointly leased with the option to purchase. Their relationship ended when defendant moved out of their home on July 1, 2011.

Plaintiff alleges that from the time they commenced living together, she, for the most part, did not work outside of the home. Defendant supported her financially, paid all of her living expenses, and paid the expenses associated with a property she maintained in Brooklyn. Defendant also purchased four horses for her. He additionally paid most of her son's college education expenses. Plaintiff contends that throughout the entirety of their relationship, defendant made repeated promises to take care of her and promised her lifetime support.

Plaintiff also claims that in December 2010, defendant executed a power of attorney (POA) appointing her as his attorney-in-fact, permitting her to "manage and conduct all of [his] affairs." Plaintiff further alleges that simultaneously, defendant executed a will in which he appointed plaintiff as both executrix and trustee, and devised the entirety of his residuary estate to her.

Plaintiff filed her initial complaint on July 8, 2011, seeking relief based upon palimony, partnership/joint venture, resulting trust, fraud and unjust enrichment. On November 10, 2011, she filed an amended complaint alleging the parties had entered into an oral contract and there had been partial performance, which removed her claim from the requirements under the Amendment. She also reasserted the claims set forth in her original complaint.

On December 2, 2011, in lieu of filing an answer, defendant filed a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted pursuant to *Rule* 4:6-2(e). Defendant contended that under the Amendment, plaintiff could

not maintain the underlying action because, assuming there was a promise to support her for the rest of her life, such a promise would only be enforceable had it been memorialized in a writing and both he and plaintiff, prior to executing any such agreement, had the benefit of independent advice of counsel.

The motion judge, in a written opinion, initially stated he was satisfied the allegations in plaintiff's complaint "[pled] a cause of action and sufficient[ly] place[d] Defendant on notice that her cause of action is based upon a palimony claim along with other legal and equitable bas[es] to support her claim." Noting that plaintiff's complaint was filed after the effective ·date of the Amendment, the judge found the Amendment "does not specifically indicate or provide guidance as to situations as the present case where it is alleged that a contractual relationship existed before the effective date of the law." He reasoned that the "[L]egislature did not clearly provide that its intent was to extinguish those causes of action that potentially existed at the time of the [Amendment's] effective date."

The judge additionally noted that when the Amendment was enacted, "[n]o grace period was provided ... to allow Plaintiff to file an action[,] as the law became effective on the same date that it was signed" into law. The judge concluded "[i]t was unreasonable to assume that the intent of the Legislature was to eliminate legitimate palimony claims that may have accrued over the last thirty years by creating a legal mechanism that did not provide affected parties any opportunity to file an action to protect their interest." He explained:

> When the Legislature indicated that "no action shall be brought," the [c]ourt interprets that phrase to mean that no action may be brought on oral agreements or promises made prospectively, that is after the effective date of the [Amendment].... [S]uch an interpretation comports with the law and equity and the probable intent of the Legislature.

The judge next considered plaintiff's cross-motion for pendente lite relief and found the motion satisfied the standards articulated in *Crowe v. De Gioia*, 90 *N.J.* 126, 132–34, 447 *A.*2d 173 (1982). In ordering pendente lite support, he noted that plaintiff was fifty-

four years old, had not worked in ten years and that although she may be capable of becoming employed or that employment could be imputed to her at some point, "it is inequitable for the [c]ourt to make those findings at this point when determining if interim, temporary support is warranted, pendente lite."

The judge also permitted plaintiff to maintain her equitable claims, specifically, her claim for support based upon partial performance, without prejudice, as well as her claims for unjust enrichment and quantum meruit, quasi-contract, estoppel, specific performance, fraud/misrepresentation, and joint venture. Finally, the judge granted plaintiff's request that defendant advance her $25,000 for pendente lite counsel fees and additional counsel fees incurred in connection with the pending applications.

The judge denied defendant's request for a stay pending appeal. Defendant filed a motion for interlocutory review and a stay of the motion judge's order. We granted both applications by order dated February 27, 2012.

On appeal, defendant raises the following points for our consideration:

POINT I

IN LIGHT OF THE [AMENDMENT], THE TRIAL JUDGE ERRED BY REFUSING TO DISMISS PLAINTIFF'S AMENDED PALIMONY COMPLAINT.

A. THE TRIAL JUDGE ERRED BY FINDING THE EXISTENCE OF A VIABLE PALIMONY CLAIM BASED ON AN ALLEGED IMPLIED CONTRACT SINCE SUCH IMPLIED PALIMONY CLAIMS ARE PROHIBITED AT LAW PURSUANT TO *N.J.S.A.* 25:1–5.

B. THE AMENDMENT TO THE STATUTE OF FRAUDS IS CURATIVE AND MUST, THEREFORE, BE APPLIED TO BAR PLAINTIFF'S CLAIM.

C. THE TRIAL JUDGE ERRED BY INTERPRETING LEGISLATIVE INTENT TO PERMIT PLAINTIFF'S ALLEGED IMPLIED PALIMONY CLAIMS SINCE THE STATUTE UNAMBIGUOUSLY PROHIBITS SUCH IMPLIED CLAIMS.

D. THE TRIAL JUDGE ERRED BY AFFORDING TOO GREAT DEFERENCE TO PLAINTIFF'S EXPECTATIONS WHEN PERMITTING PLAINTIFF'S IMPLIED PALIMONY CLAIM DESPITE THE EXIS-

TENCE OF AN AMENDMENT UNAMBIGUOUSLY PROHIBITING SUCH CLAIMS.

*POINT II*

PLAINTIFF WAS NOT ENTITLED TO PENDENTE LITE PALIMONY SINCE PLAINTIFF HAD NO VIABLE CAUSE OF ACTION FOR PALIMONY AND THE RELIEF WAS NOT NECESSARY TO MEET PLAINTIFF'S NEED.

*POINT III*

THE TRIAL JUDGE ERRED BY DENYING DEFENDANT'S REQUEST TO DISMISS PLAINTIFF'S EQUITABLE CLAIMS FOR RELIEF FOR FAILURE TO STATE A CAUSE OF ACTION UPON WHICH RELIEF MAY BE GRANTED.

*POINT IV*

THE TRIAL JUDGE ERRED BY AWARDING PLAINTIFF PENDENTE LITE AND PUNITIVE COUNSEL FEES SINCE PENDENTE LITE FEES ARE PROHIBITED AT LAW AND THERE WAS NO BAD FAITH ON THE PART OF DEFENDANT TO WARRANT PUNITIVE FEES.

## II.

Whether, as the motion judge determined, the Legislature could only have intended courts to apply *N.J.S.A.* 25:1–5(h) to palimony agreements entered after the effective date of the amendment is a question of law for which no deference is owed to the motion judge's determination. *State v. Gandhi*, 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010); *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995); *Botis v. Estate of Kudrick*, 421 *N.J.Super.* 107, 114–15, 22 *A.*3d 975 (App.Div.2011). Because questions of statutory interpretation are purely legal, the standard of review is de novo. *H.J. Bailey Co. v. Neptune Twp.*, 399 *N.J.Super.* 381, 385, 944 *A.*2d 706 (App.Div. 2008).

## A.

We first review the statutory language in order to determine whether the Legislature's intent is evident in the language of the Amendment itself. Such an approach guides our primary objective in construing a statute, namely, to discern its meaning and the Legislature's intent. *Gandhi, supra,* 201 *N.J.* at 176, 989 *A.*2d

256; *State v. Reiner,* 180 *N.J.* 307, 311, 850 *A.*2d 1252 (2004); *H.J. Bailey Co., supra,* 399 *N.J.Super.* at 385, 944 *A.*2d 706. We analyze a statute's words by first applying their ordinary meaning and significance. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005).

Where the language is clear and unambiguous, and subject to only one interpretation, the court must infer the Legislature's intent from the statute's plain meaning. *Ibid.; O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002). "A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." *O'Connell, supra,* 171 *N.J.* at 488, 795 *A.*2d 857. However, where there is ambiguity in the statutory language, a court may consider extrinsic evidence such as "the statute's purpose, legislative history, and statutory context." *State v. Fortin,* 178 *N.J.* 540, 606–07, 843 *A.*2d 974 (2004). A court may also consider extrinsic evidence if "a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." *DiProspero, supra,* 183 *N.J.* at 493, 874 *A.*2d 1039.

█ Effective January 18, 2010, the Amendment provides in relevant part:

[N]o action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:

. . . .

(h) A promise by one party to a non-marital personal relationship to provide support or other consideration for the other party, either during the course of such relationship or after its termination. For the purposes of this subsection, no such written promise is binding unless it was made with the independent advice of counsel for both parties.

[*N.J.S.A.* 25:1–5(h).]

Since its enactment, there have been only two reported opinions addressing the Amendment. In *Botis,* the plaintiff commenced an action against the estate of her late paramour, with whom she had lived for thirty-two years prior to his death. According to the

plaintiff, the decedent promised to care for her for the rest of her life, to include making provisions to continue to care for her in the event of his death. The plaintiff commenced her action after learning that the decedent's entire estate had been left to his daughter and grandchildren. The trial court found that the Amendment was intended to be accorded prospective application. *Botis, supra*, 421 *N.J.Super.* at 111–12, 22 *A.*3d 975. We granted leave to the estate and affirmed. *Id.* at 121, 22 *A.*3d 975. Framing our discussion in terms of contractual agreements, we stated that "[w]ith respect to contracts and agreements, the parties' relevant expectations are generally those they had at the time of the agreement." *Id.* at 117, 22 *A.*3d 975 (quoting 73 *Am.Jur.2d Statute of Frauds* § 429 (2010) (noting that prospective application of the statute of frauds is favored because of constitutional restrictions on impairment of contractual rights)). We reasoned:

> In this case, (1) decedent, the putative palimony promisor, died almost one-and-a-half years before the effective date of the statutory amendment, and (2) plaintiff filed her complaint shortly after his death and about more than a year before the statute was amended. As the trial judge noted, and to restate the obvious, decedent was singularly unable to comply with the new requirements. More importantly, prior to this amendment and at the time of their agreement, case law supported a mutual expectation that their agreement was enforceable without regard to a writing executed after consultation with an attorney. Neither plaintiff nor decedent could reasonably have anticipated the prerequisites to enforcement of a palimony promise during the time when they were in a position to create such a document.
>
> [*Id.* at 117–18, 22 *A.*3d 975.]

In *Cavalli v. Arena*, 425 *N.J.Super.* 595, 42 *A.*3d 250 (Ch.Div. 2012), the Law Division judge dismissed an action that was brought after the effective date of the Amendment, but the alleged promise of support was made prior to the effective date of the Amendment. *Id.* at 596, 42 *A.*3d 250. Examining the language of the Amendment, Judge Rauh found the plaintiff's complaint barred by the plain language of the Amendment which, by its terms, he found applied to the plaintiff's case. *Id.* at 597, 42 *A.*3d 250. The judge also found that the Legislature's intent, as expressed in the Senate Judiciary Committee Statement, favored

application of the amendment to cases filed after the effective date, and as such, reasoned that "[a]llowing the present claim would run directly contrary to the stated policy." *Id.* at 598, 42 *A.*3d 250.

In enacting the Amendment, the Legislature expressed its intent:

> This bill is intended to overturn recent "palimony" decisions by New Jersey courts by requiring that any such contract must be in writing and signed by the person making the promise. More specifically, the bill provides that a promise by one party to a non-marital personal relationship to provide support for the other party, either during the course of such relationship or after its termination, is not binding unless it is in writing and signed.
>
> . . . .
>
> As introduced, the bill refers to a promise "to provide support" for the other party. The committee amendments broaden this provision to refer not only to a promise to provide support, but to also refer to a promise to provide other consideration.
>
> The committee amendments also require that any such written promise will not be *enforceable* unless it was made with the independent advice of counsel for both parties.
>
> [*Senate Judiciary Committee, Statement to S.2091* (Feb. 9, 2009) (emphasis added).]

We are satisfied the words within the Amendment, construed in their ordinary terms, are clear and unambiguous in directing that enforcement of palimony agreements may only occur in those instances where the agreement has been reduced to writing and the parties have each had the benefit of independent counsel. The Amendment therefore addresses under what circumstances a promise by one party of lifetime support for another party may be enforced, irrespective of when an agreement to provide lifetime support may have been entered.

## B.

Here, the motion judge agreed with plaintiff's contention that her cause of action arose before the effective date of the Amendment, premised upon the judge's apparent view that the cause of action for palimony accrues at the time the agreement is entered, which in this case was prior to the effective date of the

Amendment. The judge reasoned that any other interpretation would release a promisor from his or her obligations "based upon the timing of when [the promisor] elected to 'breach the agreement' " allegedly made. We disagree.

 Palimony is a claim for support between unmarried persons, which our Supreme Court first recognized as a viable cause of action in *Kozlowski v. Kozlowski*, 80 *N.J.* 378, 403 *A.*2d 902 (1979). Because palimony actions are based upon principles of contract, plaintiff's cause of action accrued at the time defendant is alleged to have breached the agreement, not at the time the promise of lifetime support was purportedly made. *See In re Estate of Roccamonte*, 174 *N.J.* 381, 398, 808 *A.*2d 838 (2002); *see also Sodora v. Sodora*, 338 *N.J.Super.* 308, 313, 768 *A.*2d 840 (Ch.Div.2000); Samuel Williston, *A Treatise on the Law of Contracts* § 79:14 at 303–04 (Richard A. Lord ed., 4th ed.2004). To bring a palimony claim, a plaintiff must have a broken promise of continued support. *Bayne v. Johnson*, 403 *N.J.Super.* 125, 143, 957 *A.*2d 707 (App.Div.2008), *certif. denied*, 198 *N.J.* 312, 966 *A.*2d 1078 (2009). As such, plaintiff's cause of action for palimony accrued on July 1, 2011 when defendant, as plaintiff contends, "abandoned" her and broke his promise of lifetime support.

Plaintiff's reliance upon *Botis* to support her contention that her cause of action accrued at the time the agreement was formed is misplaced. The key distinction between *Botis* and the present matter is the fact that the oral agreement at issue there was enforceable at the time the complaint was filed. Further, the Amendment went into effect during the pendency of the proceedings. In affirming the trial court order declining to accord retroactive application of the Amendment, we stated the "critical factor in the 'prospective/retroactive application' inquiry is whether the parties could have expected and therefore, complied with the conditions." 421 *N.J.Super.* at 116–17, 22 *A.*3d 975. Plaintiff extracts from *Botis* our discussion of reasonable expectations to suggest that a cause of action for palimony accrues at the time the agreement is formed. We did not so hold.

Our discussion of "reasonable expectations" was aligned with the particular facts of *Botis:* (1) the plaintiff and decedent having entered the oral agreement while oral agreements, pursuant to case law, were still enforceable; (2) the plaintiff having filed her palimony complaint while the law still recognized the enforceability of such agreements; and (3) the decedent having died nearly one and one-half years before the effective date of the Amendment. *Supra,* 421 *N.J.Super.* at 117–18, 22 *A.*3d 975. Thus, we concluded that "[n]either plaintiff nor decedent could reasonably have anticipated the prerequisites to enforcement of a palimony promise during the time when they were in a position to create such a document." *Id.* at 118, 22 *A.*3d 975.

These are not the circumstances here. As pled in the complaint, plaintiff and defendant were still together in January 2010. An alleged oral promise of support was made prior to the January 18, 2010 effective date of the Amendment and, arguably, continued up through July 1, 2011, when defendant left plaintiff. During that nearly eighteen-month period after the Amendment went into effect and the parties remained together, they were in a position to execute a written palimony agreement and establish compliance with the Amendment. Instead, defendant chose only to execute a POA and will, both of which were notarized at an attorney's office.

Given our conclusion that the Amendment is clearly and unambiguously directed at enforcement and the parties' timely ability, before their relationship ended, to have come into compliance with the Amendment, we find it unnecessary, as we did in *Botis,* to address the reasonable expectations of the parties. If, however, we were to engage in such an analysis, based solely upon the pleadings, we would continue to conclude that plaintiff failed to state a claim upon which relief may be granted, *Rule* 4:6–2(e), given the parties' actions between the Amendment's effective date and their breakup. Their conduct would suggest no expectation, on the part of plaintiff, of promised lifetime support, but only that defendant would permit her to manage his affairs until the POA was revoked and that upon his death, he intended to name her as

the residuary beneficiary of his estate. Neither document, as a matter of law, evidences any intent or promise of *lifetime* support. Plaintiff's claim that the palimony agreement was memorialized, based upon these two documents,[1] is without sufficient merit to warrant further discussion. *R.* 2:11–3(e)(1)(E).

We do not presume, as the motion judge apparently did, that the absence of a written agreement promising lifetime support for plaintiff was based upon her reliance upon "the case law in New Jersey which is based upon contractual principles and has existed for over thirty years." Rather, in paragraph sixteen of her verified amended complaint, plaintiff states that her expectation of lifetime support derived from what she and defendant said to each other, their "conduct and surrounding circumstances whereby reasonable expectations were derived therefrom by the Plaintiff of support and asset accumulation[,]" and not from her understanding of the law.

## C.

■ We decline to address plaintiff's claim that the Amendment is unconstitutional because she failed to raise that argument before the trial court. *See Nieder v. Royal Indem. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973) ("It is a well-settled principle that our appellate courts decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." (internal quotation marks omitted)). The applicability of the Amendment to oral agreements purportedly

---

[1] We note that in support of his motion to dismiss plaintiff's complaint, defendant claimed that he was heavily medicated when the POA was executed and that the will is a forged document. Because we dispose of this appeal under the standard governing motions to dismiss pursuant to *Rule* 4:6–2(e), "[we] pass no judgment on the truth of the facts alleged; we accept them as fact only for the purpose of reviewing the motion to dismiss." *Banco Popular N. Am. v. Gandi,* 184 *N.J.* 161, 166, 876 *A.*2d 253 (2005).

entered into prior to the effective date of the Amendment does not raise a jurisdictional question. Moreover, while the issue of the applicability of the Amendment to prior oral agreements may concern a matter of great public interest, the claimed constitutional infirmity relates to the requirement that parties to a palimony agreement must consult counsel before memorializing such agreements, not to the requirement that the agreement be in writing. Since defendant's purported promise was never reduced to writing, there is no reason to address the constitutionality of this requirement.

## D.

The trial judge expressed that because "another court certainly may disagree" with its conclusion that plaintiff's action is not barred by the Amendment, he concluded Count Two of plaintiff's complaint remained viable. We disagree.

Count Two alleges:

> [O]ral and written promises were made by the Defendant to the Plaintiff which were performed upon Defendant, throughout the parties' relationship and continued to be so performed upon until the breakdown of the relationship on July 1, 2011.... The Defendant's performance of his oral and written promises to support the Plaintiff bars the Defendant from asserting a Statute of Frauds defense.

In support of this count, plaintiff generally alleged that the services performed by defendant during their relationship included paying for her living expenses and her expenses for the Brooklyn property, the parties' joint expenses, and her son's expenses.

Whether an oral promise of lifetime support may be enforced based upon a claim of partial performance, or even full performance, post-amendment is questionable in view of the Legislature's statement that passage of the amendment was "intended to overturn recent 'palimony' decisions [*Devaney v. L'Esperance*, 195 *N.J.* 247, 949 *A.2d* 743 (2008); *Roccamonte, supra; Kozlowski, supra*] by New Jersey courts[.]" *Senate Judiciary Committee, Statement to S.2091, supra.*

Assuming, however, such a claim is an exception to the requirements of the Amendment, plaintiff's pleadings provide no basis for relief. In *Klockner v. Green*, 54 *N.J.* 230, 237, 254 *A.*2d 782 (1969), cited by the trial court, the plaintiffs, the stepson and step-granddaughter of decedent, brought an action for specific performance of an alleged oral contract against the estate based upon their having performed numerous services for the elderly widow during the three years prior to her death. *Id.* at 232–33, 254 *A.*2d 782. We affirmed the trial court's grant of the defendants' motion to dismiss, *id.* at 233, 254 *A.*2d 782, but the Supreme Court reversed, noting the plaintiffs fully performed and the decedent received the full benefit of her bargain, so "the policy reasons justifying the development of the part performance exception to the statute of frauds have been satisfied." *Id.* at 237–38, 254 *A.*2d 782.

The Court elaborated that "to obtain specific performance, as is requested here, more than just full performance by plaintiffs is necessary[,] . . . that performance must be in some respects of an exceptional character, and it must be obvious that not only did the parties not intend to measure the services by ordinary pecuniary standards, but that also the services are of such peculiar character that it is impossible to estimate their value by any standard." *Id.* at 237, 254 *A.*2d 782 (internal citations omitted). The Court found that in addition to the "numerous services" plaintiffs rendered to decedent, "they also bestowed upon her the care, affection, society and companionship one would expect from a close blood relative" that merited an equitable remedy. *Ibid.*

In contrast here, however, the allegation is that the party who has performed in accordance with the alleged oral agreement is defendant, the party against whom enforcement is sought, rather than plaintiff, the party who is seeking equitable relief. Moreover, there was nothing exceptional or peculiar about the services performed by defendant, and plaintiff, as well as her son, already received the full benefit of those services.

### III.

 Plaintiff also pled unjust enrichment, quantum meruit, quasi contract and equitable estoppel. In order to recover for unjust enrichment, a plaintiff must show that the "defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 *N.J.* 539, 554, 641 *A.*2d 519 (1994) (citations omitted). Similarly, in order to recover under the quasi-contract theory of quantum meruit, "a plaintiff must establish: (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Starkey & White v. Estate of Nicolaysen,* 172 *N.J.* 60, 68, 796 *A.*2d 238 (2002) (internal quotations and citations omitted). Finally, "to establish equitable estoppel, plaintiff[ ] must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiff[ ] acted or changed [her] position to [her] detriment." *Knorr v. Smeal,* 178 *N.J.* 169, 178, 836 *A.*2d 794 (2003). Although equitable relief is widely recognized in other contexts, New Jersey courts have refrained from awarding future support based on equitable theories.

In *Kozlowski,* Justice Pashman, in his concurring opinion, first raised the question of whether quasi-contractual and equitable remedies should be available to unmarried parties upon dissolution of their relationship, where the parties failed to enter into an agreement. *Supra,* 80 *N.J.* at 390, 403 *A.*2d 902. Justice Pashman concluded that in the absence of an agreement, such remedies should be available "to insure that one party has not been unjustly enriched, and the other unjustly impoverished, on account of their dealings." *Id.* at 390–91, 403 *A.*2d 902 (J. Pashman concurring). The majority did not, however, reach this issue because an agreement existed in that case.

In 2003, this issue came before the Chancery Division, in *Carney v. Hansell,* 363 *N.J.Super.* 111, 127, 831 *A.*2d 128 (Ch.Div. 2003). There, the court declined to award future support to the

plaintiff under equitable theories, noting "Justice Pashman's concurring decision aside, no New Jersey decision to date has extended the right to receive palimony for future support without finding the existence of such a contractual agreement between the parties." *Id.* at 127, 831 *A.*2d 128.

Although the *Carney* court declined to compensate the plaintiff for services rendered as a homemaker, reasoning "claims for compensation for services rendered must fail, as [the plaintiff] received the benefit of the bargain of her relationship with defendant[,]" the court found viable the plaintiff's claim that the defendant's business interests had been unjustly enriched at her expense. *Id.* at 123, 831 *A.*2d 128. The court reasoned, "[t]here is a separation between [the] plaintiff's role as home-maker, mother and housemate, and her role as a key employee of the business" and thus "claims for past due compensation for services rendered to [the] defendant on account of the business, are an entirely different matter." *Ibid.*

Subsequent cases have also recognized that a defendant can be unjustly enriched by contributions from the plaintiff that are independent of homemaking services, even in the absence of a viable claim for palimony. *See Bayne, supra,* 403 *N.J.Super.* at 144, 957 *A.*2d 707 (recognizing it would be a clear injustice to deprive the plaintiff of her contribution to the down payment and proportionate increase in equity of the condominium and also constitute an unjust enrichment to defendant); *Connell v. Diehl,* 397 *N.J.Super.* 477, 500, 938 *A.*2d 143 (App.Div.2008) (recognizing "unmarried cohabitating persons who have engaged in a joint venture to purchase property in which they reside, are entitled to seek a partition" (internal quotation omitted)). Restatement Third of Restitution and Unjust Enrichment § 28 (2011) provides:

If two persons have formerly lived together in a relationship resembling marriage, and if one of them owns a specific asset to which the other has made substantial, uncompensated contributions in the form of property or services, the person making such contributions has a claim in restitution against the owner as necessary to prevent unjust enrichment upon the dissolution of the relationship.

Here, plaintiff's claims for unjust enrichment are based entirely upon the provision of homemaking services and companionship to defendant. Although she also pleads joint venture/partnership, she does not allege that she contributed money or services to the acquisition or development of any of defendant's assets. In short, plaintiff's equitable claims are merely different versions of her underlying palimony claim that is barred.

Finally, in view of our determination that plaintiff's claim for palimony is barred by the Amendment and her equitable claims lack merit, plaintiff is not entitled to pendente lite support nor an award of counsel fees.

Reversed and remanded for entry of judgment dismissing plaintiff's complaint with prejudice.