SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**Maeker v. Ross (A-1-13) (072185)**

**Argued March 4, 2014 -- Decided September 25, 2014**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the Legislature, in passing the 2010 Amendment to the Statute of Frauds, N.J.S.A. 25:1-5(h), intended to render oral palimony agreements that predated the Amendment unenforceable.

In 1998, Maeker and Ross began a romantic relationship. The next year, Maeker moved into Ross's home. From the time they began living together, until their separation in 2011, Ross financially supported Maeker, paying for all of her living expenses. In return, Maeker performed all of the duties requested of her. They later moved into a house they rented together and held themselves out to the world as a family unit. During their thirteen-year relationship, Ross repeatedly promised that he would financially support Maeker over the course of her lifetime. In 2001, based on those promises, Maeker left her twenty-year career in the architectural glass industry. In December 2010, Ross executed a written power of attorney, authorizing Maeker to manage and conduct all of his financial affairs and executed a written will naming Maeker the executor and trustee. On July 1, 2011, Ross ended their relationship, moving out of their joint residence, cutting off all ties to Maeker, and terminating all financial support. Maeker claims that she devoted a substantial amount of her adult life to sustaining Ross's emotional and physical needs and advancing his financial interests. She further claims that her efforts were made entirely on her reliance on the representations and promises of Ross to provide her with lifetime financial support.

Maeker filed a complaint in the family court seeking enforcement of their oral palimony agreement. Ross moved to dismiss Maeker's complaint on the grounds that it failed to state a claim on which relief could be granted because the 2010 Amendment to the Statute of Frauds, N.J.S.A. 25:1-5(h), bars enforcement of all oral palimony agreements, even those predating the Amendment. The court denied Ross's motion to dismiss, observing that the Statute of Frauds is not retroactively applied to invalidate contracts entered into before its enactment. The court found that the Amendment did not indicate that the Legislature intended to eliminate legitimate palimony claims that may have accrued throughout the last thirty years. In the absence of that clear indication, the court concluded that the Amendment should not be construed to invalidate a pre-existing palimony agreement and deprive Maeker of a cause of action. Therefore, the court allowed Maeker to proceed on her claims.

In a published decision, the Appellate Division reversed, dismissing Maeker's complaint with prejudice. Maeker v. Ross, 430 N.J. Super. 79, 97 (App. Div. 2013). The panel was satisfied that the 2010 Amendment to the Statute of Frauds clearly directed the enforcement of a palimony agreement only when the agreement is reduced to writing and the parties have had the benefit of counsel, irrespective of when an agreement to provide lifetime support may have been entered. The panel reasoned that the cause of action accrued at the time Ross is alleged to have breached the agreement, which was when he abandoned her and broke his promise of lifetime support, a year after passage of the Amendment. The panel further noted that Maeker and Ross had the timely ability, before their relationship ended, to come into compliance with the Amendment by putting the palimony agreement in writing and by securing counsel for that purpose. This Court granted Maeker's petition for certification. Maeker v. Ross, 215 N.J. 485 (2013).

**HELD:** The 2010 Amendment to the Statute of Frauds, N.J.S.A. 25:1-5(h), does not render oral palimony agreements that predate it unenforceable because the Legislature did not intend the Amendment to apply retroactively.

1

1. The Court's charge is to determine whether the Legislature intended N.J.S.A. 25:1-5(h), the 2010 Amendment to the Statute of Frauds, to apply to contracts formed before its enactment. Statutory language is generally the best indicator of the Legislature's intent. However, when the language of the statute is ambiguous or silent, and yields more than one plausible interpretation, the Court may turn to extrinsic sources, such as legislative history. The Legislature is presumed to be aware of judicial construction of its enactments and, when the Legislature adopts or copies a law from another jurisdiction, the Court presumes that it was aware of the construction given to that law by the courts of the other jurisdiction. (pp. 11-12)

2. The 2010 Amendment to the Statute of Frauds, which required that palimony agreements be in writing and that both parties have the advice of counsel, marked a significant change in the existing law. Prior to that time, this Court held that oral palimony agreements were enforceable because parties entering this type of relationship usually do not record their understanding in specific language. Kozlowski v. Kozlowski, 80 N.J. 378, 384-85 (1979). Kozlowski and its progeny remained the law until January 18, 2010, when the Amendment took effect. However, an indeterminate number of couples may have entered palimony agreements before that date. Neither the plain language of the statute, nor the legislative history to the Amendment, resolve the issue of whether the Legislature intended to render unenforceable those oral palimony agreements formed before the effective date of the Amendment. The reason for the Legislature's silence may be inferred from its knowledge that courts generally will enforce newly enacted substantive statutes prospectively, unless it clearly expresses a contrary intent, because, although everyone is presumed to know the law, no one is expected to anticipate a law that has yet to be enacted. (pp. 13-16)

3. The Statue of Frauds recognizes that certain agreements may be susceptible to fraudulent and unreliable methods of proof and therefore insists that those agreements be reduced to writing and signed. Most courts have held that if an oral contract is lawful when made, it is not rendered unenforceable by a later-passed statute requiring that the contract be in writing. One reason for not retroactively applying the Statute of Frauds to nullify an earlier-made contract is that rendering a previous valid contract unenforceable would impair the obligation of a contract. (pp. 17-20)

4. N.J.S.A. 25:1-5(h) provides that, effective January 18, 2010, no action shall be brought to enforce a palimony agreement unless the agreement is in writing and unless the parties made the agreement with the independent advice of counsel. Nowhere in the text or legislative history of N.J.S.A. 25:1-5(h) has the Legislature given any signal that it intended the new statute to extinguish previously formed, lawful oral palimony agreements. The long jurisprudential history of the Statute of Frauds evidences the strong inclination of courts not to give retrospective application to enactments that would annul prior legally authorized oral agreements, unless the Legislature expresses a contrary intent. Accordingly, the Court determines that the Legislature, in passing N.J.S.A. 25:1-5(h), did not intend to retroactively void the indeterminate number of oral palimony agreements that predated its enactment. (pp. 20-22)

5. Accepting the allegations in Maeker's complaint as true, the Court determines that she has pled a lawful cause of action. The Appellate Division erred in focusing on the date the cause of action accrued, instead of the date the oral contract was formed, for retroactivity purposes. The Appellate Division suggested that Maeker and Ross were able to memorialize their oral agreement in accordance with N.J.S.A. 25:1-5(h) between the date of its enactment and the breakup of their relationship. That, of course, presupposes that Maeker had the burden to bring her long-existing agreement with Ross into compliance with the new law and that Ross would have cooperated to put the agreement in writing and retained independent lawyers for both of them to accomplish that goal. That reasoning is inconsistent with the traditional retroactivity analysis that applies to the Statute of Frauds. (pp. 22-23)

6. In light of its holding, the Court does not decide whether equitable forms of relief would be available in the absence of such an agreement. The Court returns the parties to the status quo before the Appellate Division reversed the family court's denial of Ross's motion to dismiss, with one exception. The Court agrees with the Appellate Division that Ross's will, as a stand-alone written document, cannot serve as the basis to prove a palimony agreement. A will, by its very nature, is revocable, and therefore, without more, cannot be the basis for a binding palimony agreement. The Court does not address any issue concerning the applicability of N.J.S.A. 25:1-5(h) to palimony agreements formed after its enactment. (pp. 23-24)

The judgment of the Appellate Division is **REVERSED**, the complaint is **REINSTATED**, and the matter is **REMANDED** to the family court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN'S opinion.**

BEVERLY MAEKER,

    Plaintiff-Appellant,

       v.

WILLIAM S. ROSS,

    Defendant-Respondent.


       Argued May 5, 2014 – Decided September 25, 2014

       On certification to the Superior Court, Appellate Division, whose opinion is reported at 430 N.J. Super. 79 (2013).

       Angelo Sarno argued the cause for appellant (Snyder & Sarno, attorneys; Mr. Sarno, Jill D. Turkish, and Ashley R. Vallillo, on the briefs).

       Eric S. Solotoff argued the cause for respondent (Fox Rothschild, attorneys; Mr. Solotoff and Sandra C. Fava, on the briefs).

       Richard F. Iglar argued the cause for amicus curiae The New Jersey Chapter of the American Academy of Matrimonial Lawyers (Mr. Iglar, John P. Paone, and Dale E. Console, on the brief).

       Brian M. Schwartz argued the cause for amicus curiae New Jersey State Bar Association (Ralph J. Lamparello, President, attorney; Mr. Lamparello, of counsel; Mr. Schwartz, Brian G. Paul, and Elizabeth M. Vinhal, on the brief).


       JUSTICE ALBIN delivered the opinion of the Court.

In Kozlowski v. Kozlowski, this Court for the first time recognized the enforceability of a palimony agreement against a person who promised to provide future support to a partner with whom he shared a marital-type relationship. 80 N.J. 378, 384-85 (1979). A palimony agreement is a contract, and as we explained, palimony agreements are usually oral because "'parties entering this type of relationship usually do not record their understanding in specific legalese.'" In re Estate of Roccamonte, 174 N.J. 381, 389 (2002) (alterations omitted) (quoting Kozlowski, supra, 80 N.J. at 384). Accordingly, since 1979, the public has had a right to rely on our jurisprudence that oral palimony agreements would be enforced.

The Statute of Frauds requires that certain agreements must be reduced to writing to be enforceable. N.J.S.A. 25:1-5. Palimony agreements did not fall within the sweep of the Statute of Frauds until 2010 when the Legislature amended that statute to prohibit oral palimony agreements. N.J.S.A. 25:1-5(h).

In this case, Beverly Maeker and William Ross, although unmarried to each other, lived together and shared a marital-like relationship from 1999 to 2011. In the course of that relationship, Maeker alleges that she gave up a career and devoted herself to Ross, who promised to support her in the future. In short, Maeker claims that the two entered into a palimony agreement. In 2011, their relationship dissolved, and

2

Maeker filed an action to enforce Ross's promise to provide financial support. Ross argued that the alleged agreement was not reduced to writing and could not be enforced under the 2010 Amendment to the Statute of Frauds.

The trial court rejected Ross's argument, concluding that the Legislature intended the 2010 Amendment to be prospectively applied. The Appellate Division reversed and dismissed Maeker's complaint, holding that the Legislature intended that any palimony agreement as of 2010 had to be in writing and that oral agreements predating the Amendment were no longer enforceable.

We disagree with the Appellate Division. We find that the Legislature did not intend the 2010 Amendment to apply retroactively to oral agreements that predated the Amendment. In amending the Statute of Frauds, the Legislature was aware that historically the Statute has been construed -- absent a legislative expression to the contrary -- not to reach back to rescind preexisting, lawfully enforceable oral agreements. The Legislature has given no indication that it intended to depart from the traditional prospective application of a change to the Statute.

Accordingly, we reverse the Appellate Division and reinstate Maeker's complaint.

I.

A.

3

This appeal arises from a motion to dismiss a complaint. In reviewing whether Maeker has stated a legally sufficient cause of action, "we accept as true the facts alleged in the complaint." Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 625 (1995). From this perspective, we review Maeker's claims.

In 1998, Maeker and Ross met in Brooklyn, New York, where both lived, and the two began a romantic relationship. The next year, Maeker moved into Ross's home while maintaining ownership of her condominium where her son from a former marriage continued to reside. From the time they began living together until their separation in 2011, Ross financially supported Maeker, paying for all her living expenses, for the mortgage and upkeep of her condominium, and for her son's college education. In return, Maeker "performed all of the duties requested of her, including cooking, cleaning, companionship, homemaker and confidant." When Ross was ill, she cared for him. They traveled together, attended family events together, and moved to Bedminster, New Jersey, where they rented a house together. Ross and Maeker "held themselves out to the world as a family unit."

During the course of their thirteen-year relationship, Ross repeatedly promised that he would financially support Maeker over the course of her lifetime. In the latter part of 2001, based on those promises, Maeker abandoned her twenty-year career

4

in the architectural glass industry.  In December 2010, Ross executed a written power of attorney, authorizing Maeker to manage and conduct all of his financial affairs.  That same month, Ross executed a written will, naming Maeker the executor and trustee and leaving sufficient funds "for her comfortable support and maintenance to live in the lifestyle that she and [he] have enjoyed during [their] years together."

On July 1, 2011, Ross ended their relationship, moving out of their joint residence.  In addition to cutting off all ties to Maeker, Ross terminated all financial support to her.  Maeker claims that she "devoted a substantial amount of her adult life" to sustaining Ross's emotional and physical needs and advancing his pecuniary interests.  She further claims that her efforts "were made entirely [on] her reliance of the representations and promises of [Ross]" to provide her with lifetime financial support.

B.

Maeker filed a complaint in the Chancery Division, Family Part, Somerset County, seeking enforcement of the oral palimony agreement.  She also asserted a number of other legal and equitable theories of relief, including partial performance as a bar to the Statute of Frauds, unjust enrichment, quantum meruit, quasi-contract, equitable estoppel, and fraud.

Ross moved to dismiss Maeker's complaint on the ground that

5

it did not state a claim on which relief could be granted, pursuant to Rule 4:6-2(e).  Ross claimed that the 2010 Amendment to the Statute of Frauds, N.J.S.A. 25:1-5(h), bars enforcement of any oral palimony agreements, even those predating the Amendment.

The family court denied Ross's motion to dismiss.  The court observed that, as a rule, the Statute of Frauds is not retroactively applied to invalidate a contract entered into before its enactment.  That approach is taken, the court reasoned, to avoid a conflict with "constitutional protections against impairment of contracts," (citing 73 Am. Jur. 2d Statute of Frauds § 429 (2010)), and therefore a substantive statute will not be given retroactive effect unless the Legislature expressly states otherwise.  The court found that the 2010 Amendment did not provide a clear indication that the Legislature intended "to eliminate legitimate palimony claims that may have accrued over the last thirty years."  In the absence of that clear indication, the court concluded that the 2010 Amendment should not be construed to invalidate a pre-existing palimony agreement and deprive Maeker of a cause of action.  The court permitted Maeker to proceed on all her claims and awarded Maeker pendente lite relief and attorney's fees.

The Appellate Division granted Ross's motions for leave to appeal and to stay the trial court's decision.

6

The Appellate Division reversed, dismissing Maeker's complaint with prejudice. Maeker v. Ross, 430 N.J. Super. 79, 97 (App. Div. 2013). The appellate panel was satisfied that the words of the 2010 Amendment to the Statute of Frauds clearly and unambiguously directed the enforcement of a palimony agreement only when "the agreement has been reduced to writing and the parties have each had the benefit of independent counsel" -- and "irrespective of when an agreement to provide lifetime support may have been entered." Id. at 89. The panel disagreed with the family court's view that "the cause of action for palimony accrues at the time the agreement is entered," which in Maeker's case was before the Amendment went into effect. Ibid. According to the panel, "plaintiff's cause of action accrued at the time defendant is alleged to have breached the agreement, not at the time the promise of lifetime support was purportedly made." Id. at 90. By that reasoning, Maeker's cause of action accrued when Ross "'abandoned' her and broke his promise of lifetime support" -- a year after passage of the Amendment. Ibid. The panel also rejected the family court's presumption that Maeker relied on the palimony jurisprudence existing before the 2010 Amendment. Id. at 92.

The panel's position was that Maeker and Ross had the "timely ability, before their relationship ended, to have come

7

into compliance with the Amendment" by putting the palimony agreement in writing and by securing counsel for that purpose. Id. at 91. The panel rejected Maeker's argument that Ross's execution of a power of attorney and a will memorialized a written palimony agreement, finding that the documents did not evidence a promise of lifetime support. Id. at 91-92. The panel also rejected Maeker's equitable claims, considering them "merely different versions of her underlying palimony claim." Id. at 97. The panel declined to address Maeker's argument, raised for the first time on appeal, that the retroactive application of the Amendment is unconstitutional. Id. at 92.

We granted Maeker's petition for certification. Maeker v. Ross, 215 N.J. 485 (2013). We also granted the motions of the New Jersey Chapter of the American Academy of Matrimonial Lawyers and the New Jersey State Bar Association to participate as amici curiae in the case.

III.

A.

Maeker presented a number of issues in her petition: whether the Appellate Division erred (1) in applying the 2010 Amendment to the Statute of Frauds retroactively; (2) in concluding that the will, standing alone, did not constitute a written palimony agreement consonant with the Statute of Frauds; (3) in not addressing the Amendment's constitutionality; and (4)

8

in barring her equitable claims, including her claim of partial performance. On issues one, two, and four, Maeker essentially urges the Court to reverse for the reasons expressed by the family court. Additionally, Maeker urges the Court to find that the retroactive application of the 2010 Amendment would unconstitutionally impair her preexisting contractual rights under her palimony agreement and, alternatively, would violate notions of fundamental fairness articulated in our case law. Neither of those issues was raised before the family court.

B.

Ross advances mostly the points made by the Appellate Division as reasons for rejecting Maeker's arguments. Ross, however, buttresses the Appellate Division's conclusion that the will did not constitute an enforceable written palimony agreement. Ross submits that a will, by its very nature, is not a contract requiring consideration but rather is a revocable instrument and, therefore, it is not legally binding by a testator who changes his mind. Ross also asks this Court to decline to address the constitutional impairment-of-contract argument, because it was not raised before the family court, and to bar Maeker's equitable claims because they are based on the same facts as her palimony claim. More particularly, he argues that the partial-performance claim must be denied because it would nullify the Statute of Frauds.

9

C.

Amicus New Jersey Chapter of the American Academy of Matrimonial Lawyers urges this Court to reverse the Appellate Division. The Academy states that courts generally follow the rule that "favor[s] prospective application of statutes" unless there is a clear legislative expression to the contrary, (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)). From that perspective, the Academy contends that the Legislature has given no indication that the 2010 Amendment should be retroactively applied to the palimony agreements of unmarried cohabitants whose relationships predate the new law. To apply the law retroactively, the Academy suggests, would deny support to a party who is abandoned after decades of living with a partner, raising children together, and intertwining their finances and other affairs. The Academy also submits that the Statute of Frauds should not be construed to invalidate equitable claims, including partial performance.

D.

Amicus New Jersey State Bar Association also argues that the 2010 Amendment should be applied prospectively because the Legislature did not express an intent for the law to operate retrospectively and because to do otherwise would trench on vested rights or result in manifest injustice. Specifically, the State Bar contends that the retroactive application of the

10

statute would violate the express language of Article IV, Section 7, Paragraph 3 of the New Jersey Constitution, which provides: "The Legislature shall not pass any . . . law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." Additionally, assuming application of the Statute of Frauds, the State Bar maintains that equitable doctrines, such as partial performance and promissory estoppel, should be available as exceptions to prevent inequitable results or injustice.

IV.

A.

The primary issue on appeal is whether the Legislature, in passing the 2010 Amendment to the Statute of Frauds, L. 2009, c. 311 (codified at N.J.S.A. 25:1-5(h)), intended to render unenforceable oral palimony agreements that predated the Amendment.

Our charge here is to interpret a statute. In performing that task, "[w]e review the law de novo and owe no deference to the interpretative conclusions reached by the trial court and Appellate Division." Aronberg v. Tolbert, 207 N.J. 587, 597 (2011) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512-13 (2009)). The question is whether the Legislature intended

11

N.J.S.A. 25:1-5(h) to apply to contracts formed before its enactment.

The goal of all statutory interpretation "is to give effect to the intent of the Legislature." Aronberg, supra, 207 N.J. at 597. We first look to the statutory language, which generally is the "best indicator" of the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). Only if the language of the statute is shrouded in ambiguity or silence, and yields more than one plausible interpretation, do we turn to extrinsic sources, such as legislative history. Id. at 492-93.

Important to our analysis are two other interpretative guides. The first is that "'the Legislature is presumed to be aware of judicial construction of its enactments.'" Id. at 494 (quoting N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002)). The second is that when the Legislature adopts or copies a law from another jurisdiction, we presume that it was aware of the construction given to that law by the courts of the other jurisdiction. See Todd Shipyards Corp. v. Twp. of Weehawken, 45 N.J. 336, 343 (1965); see also Bollinger v. Wagaraw Bldg. Supply Co., 122 N.J.L. 512, 519 (E. & A. 1939) ("The English Workmen's Compensation act is identical with our own . . . . The construction given by the court of last resort of that jurisdiction to this statute is helpful, and our

legislature, we may assume, had such construction in mind . . . .").

In light of those principles, we now turn to the statute at issue.

B.

In 2010, the Legislature amended the Statute of Frauds, rendering oral palimony agreements unenforceable. N.J.S.A. 25:1-5 provides that

> [n]o action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:
>
> . . . .
>
> h. A promise by one party to a non-marital personal relationship to provide support or other consideration for the other party, either during the course of such relationship or after its termination. For the purposes of this subsection, no such written promise is binding unless it was made with the independent advice of counsel for both parties.

The Amendment states that "[t]his act shall take effect immediately." L. 2009, c. 311, § 2. The bill was signed into law on January 18, 2010, and took effect that same day. See L. 2009, c. 311. The Amendment made two significant alterations to the law. It requires that a palimony agreement be in writing

13

and signed and that the parties have "the independent advice of counsel" before making the agreement. N.J.S.A. 25:1-5(h).

The Amendment represents a sea change in the law. To understand the extent of that change, we next give an overview of the law predating the Amendment.

C.

Thirty-five years ago, in Kozlowski, supra, we observed that many couples choose to cohabit and live in marital-type relationships without marrying. 80 N.J. at 386-88. We recognized that partners in those relationships are entitled to enter into lawful agreements with one another. Id. at 387. We held that if one party induces the other to enter or remain in the relationship by a promise of support, made either orally or in writing, the agreement -- commonly referred to as a palimony agreement -- will be enforceable in court. Ibid.; see also Devaney v. L'Esperance, 195 N.J. 247, 258 (2008) (holding that, even in absence of cohabitation, "promise to support, expressed or implied, coupled with a marital-type relationship" is sufficient for palimony agreement).

We acknowledged that "[p]arties entering this type of relationship usually do not record their understanding in specific legalese," and therefore a palimony agreement may be express or implied. Kozlowski, supra, 80 N.J. at 384; see also Roccamonte, supra, 174 N.J. at 389. As was made clear in

14

Kozlowski, "the right to support . . . does not derive from the relationship itself but rather is a right created by contract." Roccamonte, supra, 174 N.J. at 389. A palimony agreement could be established "not merely by what was said but primarily by the parties' 'acts and conduct in the light of . . . the surrounding circumstances.'" Ibid. (quoting Kozlowski, supra, 80 N.J. at 384). Additionally, "a general promise of support for life, broadly expressed, made by one party to the other with some form of consideration given by the other will suffice to form a contract." Id. at 389-90 (citing Kozlowski, supra, 80 N.J. at 384).

Kozlowski and its progeny were the law until January 18, 2010. An indeterminable number of unmarried couples may have entered palimony agreements before that date, having the right to rely on the law that recognized their personal contracts. Whether the Legislature intended to render nugatory those oral palimony agreements formed before January 18, 2010, in large part, depends on the meaning of the words: "This act shall take effect immediately." L. 2009, c. 311, § 2. We must determine whether those words mean that only newly formed palimony agreements will have to comply with the Amendment or that all palimony agreements, whenever formed, must be in writing and the parties to the agreement counseled by attorneys.

15

The plain language of the statute does not resolve the issue. Nor does the legislative history to the Amendment, specifically the statements appended to the bill by the Senate and Assembly Judiciary Committees. Those statements make clear that the purpose of the Amendment is to "overturn recent 'palimony' decisions by New Jersey courts by requiring that any such contract must be in writing and signed by the person making the promise," Assem. Judiciary Comm. Statement to S. No. 2091, 213th Leg., 2d Sess. 1 (Dec. 3, 2009); S. Judiciary Comm. Statement to S. No. 2091, 213th Leg., 2d Sess. 1 (Feb. 9, 2009), but the statements do not suggest that the Legislature intended to render existing contracts, previously enforceable, null and void.

The reason for the Legislature's silence may be inferred from its knowledge that courts generally will enforce newly enacted substantive statutes prospectively, unless it clearly expresses a contrary intent. See Gibbons, supra, 86 N.J. at 521-22. One rationale for the prospective application of substantive statutes is that, although everyone is presumed to know the law, no one is expected to anticipate a law that has yet to be enacted. Ibid. (citing 2 Sutherland on Statutory Construction § 41.02, at 247 (4th ed. 1973)).

Historically, the Statute of Frauds has been applied prospectively to avoid interfering with vested rights. A review

16

of the development and treatment of the Statute of Frauds will give insight into the Legislature's intent concerning the 2010 Amendment.

V.

The Statute of Frauds recognizes that certain agreements may be "susceptible to fraudulent and unreliable methods of proof" and therefore insists that those agreements be reduced to writing and signed.  Lahue v. Pio Costa, 263 N.J. Super. 575, 599 (App. Div.), certif. denied, 134 N.J. 477 (1993); see Moses v. Moses, 140 N.J. Eq. 575, 584 (E. & A. 1947) (Heher, J.) ("The primary design of . . . the Statute of Frauds is to avoid the hazards attending the use of uncertain, unreliable and perjured oral testimony . . . .").  The New Jersey Statute of Frauds is modeled after the English Act for Prevention of Frauds and Perjuryes, 29 Car. 2, c. 3, reprinted in 5 The Statutes of the Realm 839 (1819), which was enacted by Parliament in 1677.  N.J. Law Revision Comm'n, Report and Recommendations Relating to Writing Requirements for Real Estate Transactions, Brokerage Agreements, and Suretyship Agreements 1 (1991).

The original English statute provided, "That from and after [June 24, 1677] noe action shall be brought" to enforce certain agreements unless they are in writing.  29 Car. 2, c. 3, § 4. The King's Bench in Helmore v. Shuter, (1678) 89 Eng. Rep. 764 (K.B.) 765; 2 Show. 16, ruled that the statute should be applied

17

prospectively.  The Helmore case involved an attempt to enforce an oral promise in consideration of marriage made prior to enactment of the statute.  Ibid.  The King's Bench concluded that "the intention of the makers of that statute was only to prevent for the future."  Ibid.  That court stated that "it would be a great mischief to explain it otherwise, to annul all promises made by parol before that time, upon which men had trusted and depended, reckoning them good and valid in law."  Ibid.

Like its English prototype, the original New Jersey Statute of Frauds provided that "no action shall be brought" on certain types of promises and agreements unless they are in some form of writing.  An Act for the Prevention of Frauds and Perjuries § 14 (Nov. 26, 1794), reprinted in Laws of the State of New-Jersey 133, 136 (William Paterson ed., 1800).  Shortly after the passage of the original New Jersey Statute of Frauds, the then New Jersey Supreme Court,[1] like the Helmore court, stated that "[a] parol promise, made before the statute of frauds, to be performed afterwards, is not within it, though the statute says, no suit shall be brought, after a certain day, on a parol promise, and the suit was brought after that day."  Ford v.

---

[1] Under the 1776 Constitution, the Supreme Court was an intermediate appellate court.  See N.J. Const. of 1776 arts. IX, XII.

18

<u>Potts</u>, 6 <u>N.J.L.</u> 388, 394 (Sup. Ct. 1797).  We are unaware of any New Jersey case that contradicts that interpretation of the Statute of Frauds, and indeed the nationwide approach is consistent with the <u>Helmore</u> decision.

One well-respected treatise notes that most courts have held that if an oral contract is lawful when made, it is not rendered unenforceable by a later-passed statute requiring the contract to be in writing.  4 <u>Corbin on Contracts</u> § 12.20 (rev. ed. 1997); <u>see, e.g.</u>, <u>Zapuchlak v. Hucal</u>, 262 <u>N.W.</u>2d 514, 517 (Wis. 1978) ("When a statute of frauds question arises, as here, several years after the agreement in question was made, the statute in effect at the time of the agreement controls."); <u>Hutchings v. Slemons</u>, 174 <u>S.W.</u>2d 487, 490 (Tex. 1943) (approving earlier holding that "Statute of Frauds . . . had no application to contracts made before its passage"); <u>Ralph v. Cronk</u>, 268 <u>N.Y.S.</u> 429, 430 (Sup. Ct.) ("It is plain that if the statute is to be construed literally, it, by making the contract void from the time of the enactment of the statute, impairs the obligation of the contract, and it is, therefore, unconstitutional . . . ."), <u>aff'd</u>, 271 <u>N.Y.S.</u> 1042 (App. Div.), <u>aff'd</u>, 195 <u>N.E.</u> 139 (N.Y. 1934); <u>Staples v. Hawthorne</u>, 283 <u>P.</u> 67, 70 (Cal. 1929) (stating that "[t]he agreement involved in the present action was claimed to have been made . . . long prior to the amendments [requiring such agreements to be in writing], and, therefore,

19

its validity is not affected by them"); see also Von Hoffman v. City of Quincy, 71 U.S. (4 Wall.) 535, 552, 18 L. Ed. 403, 409 (1867) (stating that "[a] Statute of Frauds embracing a pre-existing parol contract not before required to be in writing . . . . would impair the obligation of the contract," and would therefore be "forbidden").

According to Corbin, various reasons have been given for not retroactively applying the Statute of Frauds to nullify an earlier-made oral contract, but one clear reason is that rendering a previous valid contract unenforceable "would 'impair the obligation' of a contract and run counter to the constitutional provision." 4 Corbin on Contracts, supra, § 12.20 (citing U.S. Const. art. I, § 10).

We now apply those principles to the case before us.

VI.

A.

N.J.S.A. 25:1-5(h) provides that, effective January 18, 2010, "[n]o action shall be brought" to enforce a palimony agreement unless the agreement is in writing and unless the parties "made" the agreement "with the independent advice of counsel." Nowhere in the text or legislative history of N.J.S.A. 25:1-5(h) has the Legislature given any signal, express or implied, that it intended the new statute to extinguish previously formed lawful oral palimony agreements. The

20

Legislature knows how to write a statute that applies retroactively, as when it amended the New Jersey estate-tax law in July 2002 and explicitly made it retroactive to "'every resident decedent dying after December 31, 2001.'" Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 565 (2008) (quoting N.J.S.A. 54:38-1(a)(2)).

The long jurisprudential history of the Statute of Frauds evidences the strong inclination of courts not to give retrospective application to enactments that would annul prior legally authorized oral agreements, unless the Legislature expresses a contrary intent. That interpretative approach is partly based on the view that the Legislature, presumably, would not intend to pass a statute that might conflict with the constitutional guarantee that forbids the passing of any "law impairing the obligation of contracts," U.S. Const. art. I, § 10; N.J. Const. art. IV, § 7, ¶ 3. See State v. Johnson, 166 N.J. 523, 540 (2001) ("'Unless compelled to do otherwise, courts seek to avoid a statutory interpretation that might give rise to serious constitutional questions.'" (quoting Silverman v. Berkson, 141 N.J. 412, 416 (1995))); State v. Profaci, 56 N.J. 346, 349 (1970) ("[T]he presumption is that the legislature acted with existing constitutional law in mind and intended the act to function in a constitutional manner.").

Here, the Legislature did not clearly, or otherwise, express an intent for N.J.S.A. 25:1-5(h) to be applied retroactively. The Legislature, we presume, is aware that our courts will not retroactively apply a new provision of the Statute of Frauds to void a previously formed lawful oral contract in the absence of a clear legislative expression to the contrary. Accordingly, we determine that the Legislature, in passing N.J.S.A. 25:1-5(h), did not intend to retroactively void the indeterminate number of oral palimony agreements that predated its enactment. Couples entering into oral palimony agreements in reliance on Kozlowski did not have to anticipate that the Legislature might, in the indefinite future, impose writing and counsel requirements that would invalidate their agreements.

Accepting the allegations in Maeker's complaint as true, as we must on a motion to dismiss for failure to state a claim, she has pled a lawful cause of action: that she and Ross were in a marital-type relationship and cohabitating for a number of years, that Ross induced her to remain in that relationship and make sacrifices on a promise of support, and that he breached that agreement.

The Appellate Division erred in focusing on the date the cause of action accrued, Maeker, supra, 430 N.J. Super. at 90, instead of the date the oral contract was formed, for

22

retroactivity purposes.  The Appellate Division suggested that Maeker and Ross were able to memorialize their oral agreement in accordance with N.J.S.A. 25:1-5(h) between the date of its enactment and the breakup of their relationship.  Id. at 91.  That, of course, presupposes that Maeker had the burden to bring her long-existing agreement with Ross into compliance with the new law and that Ross would have cooperated to put the agreement in writing and retained independent lawyers for both of them to accomplish that goal.  That reasoning is simply inconsistent with the traditional retroactivity analysis that applies to the Statute of Frauds.

B.

In light of our holding that oral palimony agreements predating the 2010 Amendment to the Statute of Frauds are not extinguished by the new law, we choose not to decide whether equitable forms of relief would be available in the absence of such an agreement.  We return the parties to the status quo before the Appellate Division reversed the family court's denial of Ross's motion to dismiss, with one exception.  We agree with the Appellate Division that Ross's will, as a stand-alone written document, cannot serve as the basis to prove a palimony agreement.  This point does not merit much attention.  A will, by its very nature, is a revocable instrument, and therefore, without more, cannot be the basis for a binding palimony

23

agreement.  See Bendit v. Intarante, 70 N.J. Super. 116, 126 (App. Div. 1961) ("A contract operates immediately to create a property interest[,] . . . while a will is revocable . . . .  A contract creates a present, enforceable and binding right over which the promisor has no control without the consent of the promisee, while a testamentary disposition operates prospectively."  (citations and internal quotation marks omitted)); 79 Am. Jur. 2d Wills § 35 (2002) (distinguishing contracts from wills).

Last, to be clear, we decide only the issue before us.  We do not address any issue concerning the applicability of N.J.S.A. 25:1-5(h) to palimony agreements formed after its enactment.

VII.

For the reasons expressed, we reverse the judgment of the Appellate Division and reinstate Maeker's complaint, with the one exception noted.  We remand to the family court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; and JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.

24

SUPREME COURT OF NEW JERSEY

NO. _A-1_ SEPTEMBER TERM 2013

ON CERTIFICATION TO _____ Appellate Division, Superior Court _____


BEVERLY MAEKER,

       Plaintiff-Appellant,

          v.

WILLIAM S. ROSS,

       Defendant-Respondent.


DECIDED _____ September 25, 2014 _____

       Chief Justice Rabner    PRESIDING

OPINION BY _____ Justice Albin _____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE/ REINSTATE/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1